The People v. Morgan.

THE PEOPLE *ex rel.* AKIN V. MORGAN *et al.*, assessors of the town of Scipio, and TRACY *et al.*, railroad commissioners of the same town.

*Railroad aid bonds — certiorari to review proceedings of town assessors — tax payer proper party — proceedings reviewable — constitutionality of acts — evidence.*

Under several acts of the legislature, passed in 1866 (ch. 398), 1867 (ch. 917), 1868 (ch. 61), 1869 (ch. 84) and 1871 (ch. 298), the raising of money upon the credit of certain towns in aid of the N. Y. & O. M. R. R. was authorized. By such acts it was provided, that in each town the consent of a majority of tax payers, representing more than one-half of the taxable property of the town, should be necessary to the bonding. The consent was required to be in writing and duly acknowledged. The fact that a majority of tax payers, etc., had assented, was to be proved by the affidavit of a town assessor, or clerk, or county clerk indorsed on the consent which was to be filed.

Upon a writ of *certiorari* issued on the application of a tax payer of the town of Scipio, to the assessors and railroad commissioners appointed in pursuance of the acts named to bond said town:

*Held,* that a tax payer of the town, and not the town, was a proper party to apply for a *certiorari* to review the proceedings of the assessors in relation to the matter of bonding.

That the decision of the assessors, that the required number, etc., of taxable inhabitants had given consent, was a judicial decision, and as such liable to review by *certiorari.*

That the pendency of a suit in equity, concerning the same subject-matter, did not bar the proceedings.

That the statute prescribing upon what evidence the railroad commissioners should act, no other evidence could be required, and that, where it was proved by the proper affidavit, that the necessary consents had been obtained, they were authorized and required to borrow the money.

The acts authorizing the bonding of towns are not unconstitutional, on the ground, that the legislature has no power to pass them. And the acts of 1866 (ch. 398) and 1871 (ch. 298) are not so on the ground that they each embrace more than one subject, and that not expressed in its title.

It seems to be decided, that when a local or private bill contains provisions which apply to the whole State, the act is valid, although the title does not refer to such a provision. But where a statute, which applies to the State at large, contains provisions of a local or private nature, not disclosed in the title, the latter provisions are void as being in violation of the constitution.

In the two acts, the provisions of the statute give effect to the objects and purposes disclosed in the titles, and such an act is not a violation of the constitutional provision, however numerous or various its provisions may be.

The assessors being required, by the statute, to act upon their own personal knowledge in determining the question of consent, their action in doing so was valid, and their decision upon the subject conclusive in proceedings to review their action by *certiorari*.

CERTIORARI to the assessors of the town of Scipio, in the county of Cayuga, to review the proceedings of those officers in bonding said town in aid of the New York & Oswego Midland Railroad Company.

Chapter 398 of the Laws of 1866, section 1, provides, that on the application, in writing, of twelve or more freeholders, residents of any town in certain counties named in it, of which Cayuga was not one, it should be the duty of the county judge wherein such town is situated, or the supreme court at any special term thereof, to appoint not more than three freeholders, residents of said town, commissioners to carry into effect the purposes of said act.

By the next section the commissioners are authorized to borrow, on the credit of the town, such sum of money as the tax-paying inhabitants shall fix upon by their consent, in writing, not exceeding thirty per cent of the assessed valuation of the real and personal estate of said town as shown by the assessment roll of said town for 1865. The power thus conferred could be exercised only on the condition that the consent, in writing, of a majority of the tax payers of the town owning or representing more than one-half of the taxable property appearing on the said assessment roll, should be first obtained. The consent is required to be proved or acknowledged in the same manner as conveyances of real estate.

The consent was also required to state the amount of money authorized to be raised. The fact that the consent of a majority of the tax payers, representing a majority of the taxable property, has been obtained and acknowledged, or proved, should be proved by the affidavit, in writing, of one of the assessors, or by the affidavit of the town or county clerk, indorsed on such consent, which is then required to be filed.

These things being done, the commissioners may borrow the money, issue bonds, subscribe and pay for stock in the company designated in the consent.

By section 3 of chapter 917 of the Laws of 1867, the directors of the New York & Oswego Midland Railroad Company are authorized to construct a branch road from any part of its line in the county of Chenango or Madison, through those counties and

Cortland and Cayuga to the city of Auburn, whenever, in their judgment, it should be for the interest of the company so to do, and the towns along the line of said branch or interested in the construction thereof, in any county through which said road should run, should have the same right and authority to subscribe for stock and issue bonds to aid in the construction thereof, as is given by the act above referred to.

By section 1 of chapter 61 of the Laws of 1868, it is provided, that in every case where consents, in writing, shall have been obtained as required in the statutes above referred to, they shall be valid and effectual for all purposes for which they are authorized to be given, and shall not be invalidated, avoided, or in any manner affected by reason of the fact that the consents so obtained are based partly on the assessment roll of 1865, and partly on that of 1866, or for any other error, irregularity, omission or defect, provided the consent of the requisite number owning or representing the requisite amount of property have been obtained, as appears by the assessment roll for either of those years.

By section 2, it is declared that no consent of tax payers of any town, in writing, nor the bonds issued upon the faith of such consent should be invalidated or held void, or, in any manner, affected by reason of any formal, clerical or other defect, irregularity or omission in the proofs or acknowledgments of such consents, or in the making or entry, or in the minutes of any determination, or in the affidavits required to be made by any assessors, town or county clerk, or other person or body, or in any filing or recording in any town or county clerk's office, provided the requisite consents have been obtained.

Section 6 of chapter 84 of the Laws of 1869 makes the provisions of the last two sections above mentioned applicable to all consents obtained since the passage of said act, and to all such as might be afterward obtained. All consents are required to be based on the assessment roll of 1868.

By section 1 of chapter 298 of the Laws of 1871, the directors of the said company are authorized to extend their road from the city of Auburn, or from any point on said road easterly or southerly from said city, upon such route and through such counties as the directors shall deem most feasible, to any point on Lake Erie or the Niagara river. Any town in any county through or near which said road, or its branches, may be located, except such as are excepted

from the provisions of the general bonding act, may aid the construction of such road and its branches and extensions, by the issue of bonds in the manner provided for in the act of 1866, and the acts amendatory of and supplementary thereto.

By the second section of the same act, the last assessment roll preceding the time of obtaining the consents shall be adopted as the basis of such bonding.

Upon the application of the required number of the tax payers of the town of Scipio, commissioners were appointed to borrow money and subscribe for the stock of said railroad company. A paper was filed, purporting to be, and which the assessor of said town by affidavit indorsed thereon swore, contained the consent of a majority of the tax payers of said town, representing a majority in amount of the taxable property of said town, and, thereupon, the commissioners proceeded to borrow money to the amount specified in the consent, and to issue bonds therefor.

The assessors make return to the *certiorari*, that on the 26th of August, 1871, they met at the town of Scipio, and had present the last preceding assessment rolls of Scipio, together with the consents and the assessors' affidavit, and, after due computation, examination and deliberation, and from their own knowledge of the persons whose names were signed to said consents, did adjudge it was signed by the requisite number representing the requisite amount of property, and that the signatures had been duly proved.

*D. Wright,* for relator, cited *People* v. *Supervisors of Chautauqua Co.,* 43 N. Y. 10; *People* v. *Hills,* 35 id. 449 (validity Westchester Act); *Smith* v. *The Mayor of New York,* 34 How. 508 (the tax-levy case); *The People* v. *O'Brien,* 38 N. Y. 193; *Bank of Rome* v. *Village of Rome,* 18 id. 38; *Starin* v. *Genoa,* 23 id. 439; *People* v. *Mitchell,* 35 id. 551; *Sweet* v. *Hulbert,* 51 Barb. 312; *The People* v. *Mayor, etc., of Brooklyn,* 4 N. Y. 419; *Morewood* v. *Hollister,* 6 id. 327; *Gillett* v. *Fairchild,* 4 Denio, 83; *Beach* v. *King,* 17 Wend. 197; *Cruger* v. *Halliday,* 11 Paige, 314; *The People ex rel. Haines* v. *Smith,* 3 Lans. 291; S. C., 45 N. Y. 772; *The People* v. *Goodwin,* 5 id. 568; *The People* v. *Hamilton,* 39 id. 107; *The People* v. *Board of Police,* id. 506; *People* v. *Supervisors of Westchester Co.,* 57 Barb. 378; *People ex rel.* v. *Hulbert,* 46 N. Y. 110; *People ex rel.* v. *Flagg,* id. 401; *Rex Reed,* Doug. 490; *Rex* v. *Lovett,* 7 Term R. 122; *Hopkins* v. *Cabrey,* 24 Wend. 264; *Baldwin* v. *City of Buffalo,* 35 N. Y. 380; *Le Roy* v.

The People v. Morgan.

*The Mayor, etc.,* 20 Johns. 430; *Coles* v. *Coles,* 15 id. 159; 3 Kent's Com. 37; *The People* v. *Franklin,* 5 Lans. 129.

*Charles Mason,* for defendant, cited *Doolittle* v. *The Supervisors of Broome Co.,* 18 N. Y. 155; *Roosevelt* v. *Draper et al.,* 23 id. 318; 32 Barb. 105; 16 How. Pr. 137; 7 Abb. Pr. 108; 11 How. Pr. 180; *The People 'ex rel. Lawrence* v. *Schell,* 5 Lans. 353; *Golden* v. *Botts,* 12 Wend. 234; *People* v. *Overseers of the Poor,* 44 Barb. 467; *Starkweather* v. *Seeley,* 45 id. 164; *The Town of Duanesburg* v. *Jenkins,* 46 id. 294; S. C., 40 id. 574; 1 R. S. (5th ed.) 813, § 9; *Matter of Mt. Morris Square,* 2 Hill, 15; *The People ex rel. Church* v. *Supervisors of Allegany Co.,* 15 Wend. 198; 24 Barb. 140; *Matter of Conover* v. *Devlin,* id. 641; *Susquehanna Bank* v. *Supervisors of Broome Co.,* 25 N. Y. 314, 315; *Stuart* v. *Hall,* 2 Overton (Tenn.), 179; *Groshon* v. *Lyon,* 16 Barb. 461; *Ogden* v. *Bodle & Taggard,* 2 Duer, 611; *Draper* v. *Stouvenill,* 38 N. Y. 219; *The People* v. *Supervisors of Livingston Co.,* 43 Barb. 232.

MULLIN, P. J. The objections relied on by the relator's counsel to set aside the proceedings, will be considered when we come to the examination of the points presented by him.

The relator is met at the threshold of the investigation with three objections, either of which, being well taken, renders it unnecessary to consider any of the points presented by the relator's counsel.

The first is that there is no proper relator. A tax payer and resident of the town having no such status as entitles him to a *certiorari* to review the proceedings to bond said town, the town of Scipio being the only proper party as relator.

Second. A suit in equity is pending to cancel the bonds for the same errors and defects on which the proceedings are sought to be set aside in this proceeding, and a *certiorari* will not lie if the party has another remedy.

Third. A *certiorari* will not issue in this case, to bring up the proceedings, as there is no final determination to be reviewed.

I. Is the relator, as a tax payer of the town of Scipio, entitled to a writ of *certiorari* to review the proceedings of the assessors?

It has been held in several cases that a tax payer cannot maintain an action in his own name to restrain the collection of a tax assessed upon the inhabitants of a town, village or city, of which

he is a resident; nor can he maintain an action to set aside the proceedings of municipal corporations, which only affect him as they do the other tax payers or inhabitants of such corporations. But he can maintain such an action when he sustains some special injury. *Doolittle* v. *Supervisors of Broome,* 18 N. Y. 155; *Roosevelt* v. *Draper,* 23 id. 318; *Kelsey* v. *King,* 32 Barb. 410.

It does not follow that, because a tax payer may not maintain an action to restrain the assessment "or collection of a tax, or to restrain or set aside proceedings of a municipal corporation, he may not be entitled to a *certiorari* to review the proceedings of those who assessed the tax or performed the corporate act, and to set aside, if found to have been done in violation of law.

The decision of the assessors, that the consent of the required number of tax payers and that they represent the requisite amount of property, is a judicial decision. They are required to examine the rolls, calculate the number of tax payers and the amount of property represented by them, and upon this and their own personal knowledge of the identity of the persons whose names are found upon the rolls, with those who sign the consent, they determine whether the required majority have consented to the bonding.

Again the tax payer has no other adequate remedy.

The decision being a judicial one, the officer or body making it is not liable for the error, if they have made one, and the mischief in this class of cases is complete and irremediable, the moment the bonds get into the hands of a *bona fide* holder for value, without notice of the error or defect which is relied upon to avoid them. Again, the cases above cited preclude the tax payer from maintaining an action in equity to set aside the proceedings, and I know of no legal action the tax payer can bring to protect himself against an unlawful issue of bonds.

It does not require the citation of authorities to show that a party is entitled to a common-law *certiorari* to review the determination of a body or officer acting judicially, when he has no other remedy. *The People ex rel. Van Rensselaer* v. *Van Alstyne,* 32 Barb. 131; *Le Roy* v. *The Mayor of New York,* 20 Johns. 430; *Lawton* v. *Commissioners of Cambridge,* 2 Cai. 179; *People* v. *The Mayor,* 2 Hill, 9; *Matter of Mount Morris,* id. 14; *Western Railroad Company* v. *Nolan et al.,* 48 N. Y. 513.

If the relator is not entitled to review the proceedings by *certiorari,* he is remediless, however unjust or illegal the proceedings to

bond the town may be. I trust the time will never come in the history of the judiciary of this State when the courts will refuse to the citizen relief against injustice and oppression, because of any supposed public policy that forbids it, or of the inconvenience it may occasion to either the public or individuals.

The great number of actions that tax payers might bring if each is held entitled to maintain one in this class of cases, should be allowed to influence the question no further than to require that one suit only shall be maintained and that in behalf of all.

Is the town the proper party to be the relator for the review of such proceedings ? It has not a particle of interest in the proceedings to bond it. To entitle a party to a *certiorari*, he or it must have an interest in the proceedings that are intended to be brought up by it.

The town is not bound to pay the bonds; on the contrary, the law provides for their payment by the tax payers thereof — what then has the town to do with the question ?

The town represents the tax payers for most purposes, but in proceedings to bond it in aid of railroads, the consent of a majority of the tax payers must be obtained. Before a suit can be brought by the town, or proceedings instituted to review the action of the assessors, a vote of a town meeting must be obtained in favor of bringing such suit or proceeding. The majority that consented to bond the town can defeat an attempt to get a vote of the town in favor of bringing the suit and thus the minority are left without any protection against the action of the majority, however illegal or oppressive it may be.

It is easy to say, that in a government like ours the majority must govern, and it is not to be supposed that they will act unjustly toward the minority, and if they do, the wrong must be redressed by an appeal to their sense of justice and magnanimity, rather than by a resort to the judicial tribunals.

When one man wrongs another, the doors of the courts are thrown wide open to admit the injured party to obtain redress. But when a majority mortgage the property of the minority against their will, and in violation of law, they are turned over to the wrong-doers to obtain redress. Such a proposition adds insult to injury.

When a candidate for office is deprived of his office by illegal voting, or the fraudulent action of those whose duty it is to canvass the votes, he has a remedy to redress the wrong; but when he is made

a stockholder in a railroad company against his will, and his property taken to pay for the stock, he is without remedy. This cannot be so in a land in which the commandment "*thou shalt not steal*" is not deemed to be abrogated.

II. Is the suit in equity a bar to the remedy by *certiorari*.

I have referred to cases holding that a tax payer cannot maintain an action in equity to restrain the collection of a tax that is imposed upon all the inhabitants of a municipality in common with himself, nor to set aside a corporate act affecting the same class of persons. If this is the law, the suit relied upon by the respondents' counsel cannot bar the remedy by *certiorari* as the plaintiffs in it can never obtain by it a particle of relief.

III. Is the determination of the assessors final, so that a *certiorari* may issue to bring them up for review?

If they were not final when the *certiorari* was brought, they never will be.

The question whether the required number of tax payers had signed the consent was finally disposed of, and all that was thereafter done was done by the commissioners in preparing the bonds and subscribing for stock, acts purely ministerial.

For myself, I entertain no doubt the relator was entitled to the writ, and this court has the power under it to review the proceedings of the assessors, and, if found to be illegal, to set them aside.

I have examined the book handed up that contains the writ and return thereto, and I find in it no return other than that, an abstract of which is given above, and that sets forth the meeting of the assessors, the inspection of the tax rolls and consents, and their adjudication upon them, and their own knowledge of the identity of the persons signing the consents with those whose names are on the assessment roll.

The respondents' counsel evidently intends to use this adjudication as a bar to the right to go behind it, and review the action of the assessors.

The court, in reviewing the proceedings, are governed by the return of the officers or body to which the writ is directed. *Matter of Eightieth Street*, 16 Abb. 169; *The People* v. *The Mayor, etc.*, 2 Hill, 9; *People* v. *Wheeler*, 21 N. Y. 82. It will not take into consideration papers annexed to the return. Case last cited and *Allyn* v. *Com'rs of Schodack*, 19 Wend. 342.

The relator's first point is, that the assessors had no jurisdiction to make the affidavit indorsed on the consents, as it does not appear by the return that the road of the New York & Oswego Midland Railroad Company was located in the town of Scipio, or any other town, of the county of Cayuga.

When a statute prescribes the evidence that shall be furnished to an officer or tribunal in order to authorize the issue of process, or the performance of any other duty, jurisdiction is acquired when such evidence is furnished, and no further or other evidence can be required.

The railroad commissioners of Scipio were authorized and required to borrow money and issue bonds when it was proved to them, by the affidavit of the assessor or town clerk, or by that of the county clerk, that the consents required by the statute had been obtained. No proof is required that the Midland Company had been incorporated, or its line located in Scipio, or elsewhere, in the county of Cayuga.

If these facts must have been proved, how was the proof to be made, orally or by affidavit? Who should administer the oaths, and how and by whom was the evidence to be perpetuated, so it could be returned when called for by the courts or parties interested?

Neither the assessors nor commissioners have the power to administer oaths, nor does the statute seem to contemplate that evidence on any subject should be given, except such as is derived from the assessment rolls, consents and the personal knowledge of the assessors.

There may be cases in which proof, in addition to that in terms required by the statute, should be made in order to confer jurisdiction. Should a statute authorize an order of arrest on proof that the defendant was a non-resident, it would probably be implied that proof of indebtedness, or other cause of action, should be made in order to confer jurisdiction. But, in such cases, the officer or court would have power to administer oaths, and could perpetuate the evidence taken before him. But, when the officer or tribunal has no such power, the proofs specified in the statute need only be furnished. The legislature alone is responsible for the injustice, if any, resulting from such unguarded and unwise legislation.

It is not necessary, under the act of 1866, which is the first act authorizing bonding in aid of the Midland Company, that any railroad should be built or located before the bonds may be issued by

the towns in the counties named in the first section of that act. The only security the people of the towns in those counties had, that the moneys raised would be used for the construction of a railroad, was the integrity of the directors.

The acts of 1867 and 1869, authorizing the directors of said railroad company to construct a branch road from the main line through the counties named in it — and of these Cayuga is one — whenever it should, in their judgment, be for the interest of said corporation, the towns and cities along the line of said branch road, or interested in the construction thereof, in any county through which said road should run, were authorized to bond themselves to aid in the construction thereof.

The company to be aided is the New York & Oswego Midland, and the road for which the money raised is to be applied is the road of such company, which embraces the main line and its branches.

The section seems to have been carefully prepared, and the distinction between the branches and the road of the company observed. The towns and cities along the line of the branches, through which said *road* shall run, were authorized to bond in aid of the construction thereof — that is, in aid of the road, not of the branches only.

By the act of 1871, the Midland Company is authorized to extend and construct its road from Auburn or any point on the line of its road, easterly or southerly from said city, through such counties as it should deem most feasible, to any point on Lake Erie or Niagara river, and any town, in any county, through or near which said road or its branches may be located, with certain exceptions not material to be referred to, may aid the construction of said railroad and its branches, by the issue and sale of bonds.

This section makes it quite certain that the money raised is to be applied to the construction of the road, including, in that term, all its branches, and is not to be raised to aid in the construction of the branches only, but may be applied wherever the company deems proper, subject to the general restriction that it is not to be applied to the construction of the road or its branches beyond the county, except upon a condition not important to be stated.

The counsel for the relator insists, in his second and third points, that the acts which authorize the bonding of towns in aid of railroads is unconstitutional and void, because the legislature has no power to pass such acts, and that the acts under which it is sought to bond the town of Scipio is unconstitutional, for the reason that

the acts of 1866 and 1871 embrace more than one subject, and that is not expressed in the title, and there are provisions in it affecting the public as well as private rights and interests.

The constitutional power of the legislature has been affirmed by the court of appeals, and it is not for this court to consider that question.

The objections to the title of the acts of 1866 and 1871 is not well taken.

It is difficult, if not impossible, to deduce from the case any rule by which to determine what provisions in a local or private bill, not expressed in the title, renders it void, as being in violation of that provision of the constitution, section 16 of article 3, which provides that such bills shall not embrace more than one subject and that shall be embraced in the title.

But it seems to be decided that, when a local or private bill contains provisions which apply to the whole State, the act is valid, although the title does not refer to such a provision. *The People* v. *McCann*, 16 N. Y. 58; *Williams* v. *The People*, 24 id. 405; 2 Dwarris on Stat. 472.

But when a statute which applies to the State at large contains provisions of a local or private nature, not disclosed in the title, the latter provisions are void as being in violation of the constitution. *The People* v. *The Supervisors of Chautauqua*, 43 N. Y. 10.

The title of the act of 1866 is an act to facilitate the construction of the New York & Oswego Midland Railroad, and to authorize towns to subscribe to the capital stock thereof.

The provisions of the statute give effect to the objects and purposes disclosed in the title, and such an act is not a violation of the constitutional prohibition, however numerous or various they may be. *The Sun Mutual Insurance Co.* v. *The Mayor*, 8 N. Y. 241; *De Camp* v. *Eveland*, 19 Barb. 81; *Brewster* v. *City of Syracuse*, 19 N. Y. 116; *Conner* v. *The Mayor*, 5 id. 285.

These remarks apply to, and dispose of, the objection to the act of 1871.

The relator's fourth point is, that the affidavit of the assessors should be vacated, because the return is wholly defective.

If the return is not sufficiently full in relation to the matters which the counsel desires to have reviewed, he should have applied for a further and more specific return. Not doing so, the return

must be held sufficient if it sets forth the determination made and the facts upon which it was founded.

This the return states as fully as the writ requires. It was not necessary for the assessors to state the number of tax payers whose consents were adjudged to be valid and how many were rejected as invalid. This detail, if admissible, could only be obtained by a further return. The return shows affirmatively that, upon the facts found by the assessors, the determination is correct.

The counsel's fifth point is, that the assessors could not adjudge and determine, from their own knowledge, of the identity of the persons whose names were signed to the consents with those whose names appeared on the assessment.

Without the identity of these persons being established, the fact that a majority on the roll had signed the consents could not be established.

The statute furnished no mode of proving those facts except by the personal knowledge of the assessors, and it was therefore incumbent on them to bring their personal knowledge to their aid in determining the question of identity. It is obvious, moreover, that the duty of determining this question was conferred on the assessors, because of their acquaintance with the tax payers of the town.

Assessors, like other officers, must act upon legal proof when the statute under which they act gives them the means of obtaining it. But when they are required to act upon evidence that is not what is known as legal evidence, their action is valid, however the evidence may be obtained.

The sixth point is, that it is a mistake to suppose the legislature has made the affidavits any proof whatever of the conclusions stated therein in a direct proceeding to vacate and set them aside.

The court, upon a return to a *certiorari*, determines whether the officer or body making the return acquired jurisdiction to do the act or make the determination which is complained of, and whether it has conformed to the statute by which he or it was authorized to act.

When the assessors in this case show that they had before them the assessment roll and consents, the signatures to which were proved as conveyances of real estate are required to be proved, they were authorized by the aid of their personal knowledge of the tax payers to determine whether the requisite number had signed the consents, and they could return no other matter or fact.

The determination, when accompanied by the affidavit, is, it seems to me, from the very necessity of the case, conclusive in this proceeding. The affidavit is declared to be evidence that the consent of a majority of the tax payers has been obtained, and it, or a copy of it, shall be admitted in evidence in any court and before any judge or justice thereof. Whether it is conclusive in any collateral action or proceeding it is not important to consider.

The counsel, in his seventh point, examines the consents and the assessment rolls, and insists that a majority has not consented to bond the town.

I have already expressed the opinion that the decision of the assessors must, for the purposes of this case, be held to be conclusive.

The determination of the assessors must be reviewed here upon the evidence before them, and not upon any other or different. We cannot get the benefit of their personal knowledge as to the identity of persons, and it is therefore impossible for us to declare their determination erroneous.

If we were at liberty to enter upon the investigation of the question whether a majority had signed the consents, without any other evidence of identity than is declared in the return, I should be of the opinion that it did not appear that a majority had signed the consents.

The eighth and ninth points do not, it seems to me, require any further examination; they have been incidentally considered in the examination of the other points.

The proceedings and determination of the assessors should be affirmed, and the *certiorari* quashed.