THE STATE ex rel. THE TOWN OF MANITOWOC vs. THE COUNTY CLERK OF MANITOWOC COUNTY.

*September 7 — December 11, 1883.*

CERTIORARI *to review proceedings of commissioners of equalization.*

1. The suing out of a writ of *certiorari* to review the proceedings of commissioners of equalization appointed under ch. 291, Laws of 1880, is the commencement of an action within the meaning of subd. 2, sec. 776, R. S.; and the writ should not be allowed upon the relation of a town unless the person or officer applying therefor was directed so to do by the electors of the town.

2. Upon *certiorari* to review the proceedings of commissioners or other boards or officers, the presumptions are all in favor of their rightful action, and their proceedings will be upheld unless it be made clearly to appear that they have proceeded in a manner not authorized by law.

3. A report of commissioners appointed under ch. 291, Laws of 1880, which complies in substance, though not in form, with the statute and which works no substantial wrong or injustice, should not be set aside on *certiorari.*

4. Upon *certiorari* to review the proceedings of such commissioners the case must be decided upon the papers in the case and the return of the commissioners, and affidavits or other proofs not found in the return cannot be considered. If they have proceeded according to law the determination of the commissioners is conclusive and its fairness cannot be inquired into.

APPEAL from the Circuit Court for *Manitowoc* County. The facts sufficiently appear from the opinion.

For the appellant there was a brief by *Estabrook & Walker*, and oral argument by *Mr. Estabrook.*

For the respondent there was a brief by *Nash & Nash*, and oral argument by *Mr. L. J. Nash.*

The following opinion was filed September 25, 1883:

TAYLOR, J.    This is a proceeding, by writ of *certiorari*, to review the proceedings of commissioners of equalization, appointed on the petition of the city of Manitowoc, under the provisions of ch. 291, Laws of 1880. The commissioners were duly appointed by the circuit judge in the early part of 1881, and made their report August 30, 1881.

The writ of *certiorari* was issued December 7, 1881. At the January term of the circuit court for said county of Manitowoc, and before the return thereof, the defendant moved to supersede the writ. This motion was denied. After the return was made and filed, the defendant moved to quash the writ. This motion was also denied, and on September 7, 1882, final judgment was entered in favor of the relator, setting aside and annulling the acts of the commissioners, so far as they affected the rights of the town of *Manitowoc*, and from such judgment an appeal is taken to this court.

The learned counsel for the appellant makes two general points upon which he relies for a reversal of the judgment of the circuit court: *First*, that the writ ought not to have been granted, and should have been superseded upon his

AUGUST TERM, 1883. 17

State ex rel. Town of Manitowoc vs. County Clerk, etc.

motion before his return, or quashed upon his motion after the return; and, *second*, that upon the merits of the case the circuit court should have affirmed the proceedings of the commissioners. The principal reasons urged to sustain the first point are that there was no authority shown on the part of the petitioner for the writ from the relator, the *Town of Manitowoc*, authorizing or directing him to make application for the writ in the name of the town, and, second, that the town as a municipality has no such interest in the subject matter as to authorize the court to issue the writ on its application. The majority of the members of this court are of the opinion that the suing out of the writ of *certiorari* in this case was the commencement of an action within the meaning of subd. 2 of sec. 776, R. S. 1878, which provides that the electors of the town shall have power at any annual meeting " to direct the institution and defense of all actions in which the town is a party or interested, to employ all necessary agents and attorneys for the prosecution and defense of the same, and raise such sums of money for that purpose as they may deem proper." The issuing of the writ being the commencement of an action within the meaning of said act, we are of the opinion that the writ ought not to have been allowed upon the relation of the town, unless the person or officer applying for the same was directed by the electors of the town to make such application. The issuing of the writ in such case being, to some extent at least, a matter in the discretion of the court, and its issuance on behalf of the town involving consequences in the way of costs and expenses which might be greatly detrimental to the electors and tax-payers of the town, the writ ought not to be issued without the authority of the electors. The tax-payers, who are, as a general thing, the electors of the town, are the parties interested in preventing the imposition of a charge against taxable property of the town through the action of the commissioners, and the action to

review the acts of the commissioners should either be instituted by the tax payers, or some of them, in person; or, if instituted by the town as the relator, it should only be upon the order of the electors made at a town meeting. See *People v. Morgan*, 65 Barb., 473, 481. In this case it is strongly intimated that the town, as a municipality, has no such interest in the subject matter of the controversy as to hold the position of relator, and that the tax-payers, or some of them, should be the relator. We do not deem it necessary to determine that question in this case, as there is nothing in the case to show that the town ever authorized the use of its name as the relator in this proceeding.

For the reason that no authority to act on behalf of the town was shown by the person making the application for the writ, and the applicant not claiming to have any such authority, we hold that in the exercise of a legal discretion in the matter the court should have either refused to issue the writ, or have superseded or quashed it on motion made for that cause. But as the case was heard on its merits in the court below, as well as in this court, we are disposed to examine the return to the writ in order to determine whether the proceedings of the commissioners were so irregular as to justify the court in declaring them void and of no effect in the law.

The commissioners were appointed under ch. 291, Laws of 1880. The object of this law and of ch. 212, Laws of 1882, amending said ch. 291, was to remedy an evil which was claimed to grow out of the acts of the several county boards in those counties within whose boundaries there were situate small cities. It was claimed that the majorities of the members of the county boards in such counties combined together in equalizing the taxable property of the several municipalities in their counties, so as to cast an unequal and unjust burden of taxation upon such cities. The law of 1880, and its amendment in 1882, are general in their nature, and give

any town, city, or village in any county, which feels
aggrieved by the action of the county board in equalizing
the assessments in the county, the right to apply for the
appointment of three commissioners, not residents of the
county and having no taxable property therein, to review
the action of the county board in making such equalization
of the assessments. The commissioners not being residents
of the county, nor tax-payers therein, it was supposed would
be a more impartial body than the members of the county
board, who are usually considerable tax-payers in their own
towns, and likely to be partial to their own municipality,
and interested in keeping taxation in the towns they repre-
sent at the lowest possible rate. It will be seen, too, by an
examination of the laws of 1880 and 1882, that the commis-
sioners appointed under them have no power to make any
assessment upon which any taxes are to be apportioned or
extended. No act of theirs fixes any valuation upon the
taxable property of any town, city, or village upon which
any tax can be levied. They simply determine whether the
value of the taxable property in the several towns, cities,
and villages in the county is, as between such towns, cities,
and villages, relatively equal; and if they determine they
are not relatively equal, they determine what per centum
ought to be added to, or deducted from, the values of such
property in the several towns, cities, and villages of the
county, as fixed by the county board, in order to make them
equal. No taxes are, however, levied upon the valuations
fixed by the commissioners. The taxes are collected upon
the valuations fixed by the county board. The equalization
made by the commissioners simply forms a basis for deter-
mining whether any of the municipalities have been charged
with too large a portion of the taxes for the current year,
and what ones have been charged too small a portion thereof;
and upon the basis so furnished by the commissioners, the
county board is required to credit the towns and cities that

have been charged too much, and debit those charged too little, in the apportionment of the taxes for the next succeeding year.

It is urged by the learned counsel for the respondent that it appears from the returns of the commissioners that they proceeded in an illegal and unauthorized manner in determining whether the relative value of the taxable property in the several towns, etc., was equal; that in determining such question they did not consider the question of the relative valuations of the personal property in said towns, etc., and consequently that, for aught that appears in the report of the commissioners, they have not determined what the relative value of the whole taxable property of the several towns, etc., is. It may be admitted that if it clearly appeared from their report that in making their equalization of the taxable property of the several towns, the commissioners did not consider the question as to the relative value of the personal property, then their proceedings would be illegal, and were properly declared void. The rule of law is that upon *certiorari* to review the proceedings of commissioners, or other boards or officers, it must be made clearly to appear that they have proceeded in a manner not authorized by law, otherwise their proceedings will be upheld. The presumptions are all in favor of the rightful action of the commissioners. The report in this case shows affirmatively that the commissioners found that the real estate in the several towns not within any town plats was not equally valued by the county board, and they determine how much must be added or deducted to make it equal. It also shows that as to the town lots in the several towns outside the city of Manitowoc, they find they were assessed equally by the county board. The report says nothing about personal property, and in no way adds to or deducts anything from the assessed valuation of personal property in any of the towns, cities, or villages. We must, therefore, presume that

they found no inequality in such assessments, and not presume they violated the law by not considering them at all.

In the case of *People ex rel. v. Hadley*, 76 N. Y., 338, MILLER, Justice, in delivering the opinion of the court, says: " It is claimed that the assessors decided as to the excess as compared with some of the towns, and not all of the towns, in the county.   Although the decision of the assessors states that the excess stated was 'above its [Yonkers'] proportional value as compared with *some of the towns*,' and proceeds to state upon what towns and what amounts shall be levied and collected to be credited to the city of Yonkers, the language employed will, I think, bear the interpretation, not only that injustice had been done as compared with these towns, but that it had not been done as to the others.  As it was the duty of the assessors to consider all the towns, it is a fair assumption that this was done.  The return to the *certiorari*, which I think is properly to be considered upon the hearing of the case, shows that the assessors arrived at the result by a comparison of Yonkers with all the towns."  The return of the commissioners in the case at bar follows the language of the statute under which they were appointed, and the table returned by them, showing the additions and deductions to be made in order to make the assessments equal, shows that they arrived at it by adding or deducting a stated sum on the $100 of the assessment made by county boards upon the real estate in the towns outside of the city of Manitowoc, not including the village lots in such towns. They did not include the village lots, because they found that they were, so far as they could judge, assessed by the county board equally, and as they say nothing one way or the other as to the personal property, we ought to conclude that they did not find any inequality in such assessments.  In following the statute strictly, they should, perhaps, have added or deducted a fixed sum on the $100 of the entire assessments of the several towns, etc., in the county.  But as

we must presume that they found the lot property and personal property in the several towns relatively equally assessed, and that the inequality was confined to the assessment of the real estate in the city and the acre property in the towns, any addition to or deduction from the valuation of such acre property in the towns, and the real estate in the city of Manitowoc, which would make such valuations equal, would necessarily render the valuations of all the taxable property in said towns and city equal.

Although the report of the commissioners does not in form comply with the requisitions of the statute, it does so in substance. The form in which the report is made works no injustice to any one, and it forms as accurate a basis for calculating the amounts which should be charged in the next apportionment of taxes to the towns which were assessed too low by the county board, and be credited in such apportionment to the towns assessed too high, as though the letter of the statute had been followed by the commissioners. It may be that the raising or lowering the valuations of real estate alone in any town might work injustice as between the individual tax-payers of said town, where the taxes are to be levied upon the valuations so raised or lowered as well as upon the valuations of personal property which are left unchanged; but, as said above, no taxes are apportioned upon the valuations fixed by the board of commissioners, but in every case upon an assessment and valuation made thereafter. The sole object of the statute is to determine whether the complaining town has been charged' with more than its just proportion of the taxes levied in the whole county, and which are supposed to have been paid by the tax-payers of the complaining town, and that fact is just as apparent where the real estate alone in said town is assessed relatively too high, as compared with the other towns, as where its real and personal property, both, is relatively too high. It does not appear from the return

that the method adopted by the commissioners to equalize the assessments worked any injury to the relator, and their action should not, therefore, be set aside because not in strict accordance with the law. *Knapp v. Heller*, 32 Wis., 467. Following the rule laid down by the court in this case, we think the return of the commissioners does not show that any substantial wrong or injustice has been done to the relator, and that the circuit court ought, therefore, to have quashed the writ upon motion, or affirmed the proceedings of the board on the hearing upon the merits.

We do not deem it necessary to answer the criticism of the learned counsel for the appellant upon the decision of the court in the case of *State ex rel. v. Myers*, 52 Wis., 628, in view of the subsequent legislation upon this subject, as we think the report of the commissioners should have been upheld, though their duty was to consider the assessments of both real and personal property, as declared in that case. The amendment of 1882 has put that question at rest; and it is clear now that the duty of the commissioners appointed hereafter will depend upon the complaint made by the municipality or municipalities asking for their appointment. If the municipality asking their appointment complains only of the inequality of the assessment of real property, their duty will be to investigate that matter alone. Their duty as to whether they shall inquire into and correct the inequalities in the assessments of real property alone, or both real and personal property, or personal property alone, will depend upon the grievance complained of by the municipality asking for their appointment. The correctness or incorrectness of the decision in the case above cited can have no practical effect in the future.

We think the learned circuit judge was right in holding that the case must be decided upon the papers in the case and the return of the commissioners, and that it was improper to consider any affidavits or other proofs not found in the

return to the writ. *People v. Morgan*, 65 Barb., 473; *People ex rel. v. Ryken*, 6 Hun, 625; Cary, N. Y. Pr., 164, 168. If the commissioners have proceeded according to law, then their determination is conclusive in the matter, and upon the return to the writ the circuit court has no authority to inquire into the fairness or equality of the apportionment of the taxes made by the commissioners, any more than it would have the power to inquire into the fairness and equality of the equalization of the county board. *West v. Ballard*, 32 Wis., 168.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to the circuit court to quash the writ and dismiss the cause.

A motion for a rehearing was denied December 11, 1883.