THE STATE EX REL. MEREDITH, Appellant, vs. LIPPELS, County Clerk, Respondent.

| 112 | 203 |
| c115 | ¹ 65 |

*November 5 — November 29, 1091.*

*Taxation: Review of county apportionment: Commission: Powers: Right of majority to act.*

1. Sec. 1077*a*, Stats. 1898 (providing that, upon the application of any city, village, or town aggrieved by the action or decision, as to either real or personal property or both, of the county board in making the county apportionment under sec. 1073, the circuit judge shall appoint a commission to review such action or decision), gives to such commission power to review all the valuations in the county, either of real or personal property or both, as the application may specify, and to raise or lower the valuation of any town so far as necessary to produce a just relation between all such valuations in the county, even though the valuation of the town which applies for the commission may not be changed.

2. Subd. 3, sec. 4971, Stats. 1898 (providing that "all words purporting to give a joint authority to three or more public officers or other persons shall be construed as giving such authority to a majority of such officers or persons, unless it shall be otherwise expressly declared in the law giving the authority"), applies to a commission appointed under sec. 1077*a* to review a county apportionment of taxes.

APPEAL from a judgment of the circuit court for Price county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

This is an action of *certiorari* to review the proceedings of a commission of equalization appointed by the circuit court for Price county to review the equalization of property in the county for taxation made by the county board of supervisors in the year 1898. The writ was sued out by a resident and taxpayer of the city of Phillips, which is an incorporated city in said county. It appears by the return that in March, 1899, the town of Worcester, in Price county, applied to the circuit court for the appointment of three commissioners to review the equalization of real and personal prop-

erty of the county made by the county board in the year 1898; that after due notice F. A. Bell, J. L. Hagarty, and John E. Jones were appointed as such commissioners May 11, 1899; that said commissioners qualified and proceeded to the performance of their duties, made a personal examination of a considerable part of the county, examined many witnesses, and filed their determination August 7, 1899. By this determination it appears that in three of the towns of the county they made no change in valuations; that in the town of Worcester they deducted the sum of $1,505 from the aggregate valuation of property; that in three other towns they deducted various sums, making the aggregate deductions $105,728; that in five country towns and the city of Phillips they increased the valuations in various sums, ranging from $4,427 in the town of Prentice to $60,408 in the city of Phillips, the total additions just equaling the reductions, so that the total valuation of property in the county remained the same as before. It further appears from the return that said board appointed one of their number as secretary, and that he kept minutes of the daily proceedings of the board, which minutes were filed with the report or determination of the board, and from which minutes it appears that on sundry days when the commissioners were hearing testimony only two commissioners were present; but it further appears that the testimony was all taken by a shorthand reporter and reduced to writing, and that all of the commissioners joined in the report. Upon this return the court affirmed the proceedings, and the relator appeals.

*M. Barry,* for the appellant.

*James O'Leary,* for the respondent.

WINSLOW, J. The appellant makes two contentions: first, that the commissioners had no authority to increase or reduce the valuations of the towns and cities of the county generally, but only to determine whether the assessment of

the town of Worcester was too high and, if so, to reduce it and make such change in other towns as might be made necessary or proper by the change in the assessment of the town of Worcester; and, second, that the commissioners lost jurisdiction by the failure of one of them to sit with his colleagues for several days while testimony was being taken.

1. This is a question as to the proper construction of sec. 1077a, Stats. 1898. We were not furnished with any direct authorities upon this question by either counsel, nor have we been able to find any in the course of our own investigations. The substance of this section first appears in the legislation of this state as ch. 291, Laws of 1880. Sec. 1 of that act provides, in substance, that any city, village, or town feeling aggrieved by the action or decision of the county board in making a county apportionment under sec. 1073, R. S. 1878, may apply to the circuit judge within a year for the "appointment of three commissioners" to review the same, "and to examine and determine what sum upon the hundred dollars should be added to or deducted from the aggregate valuations thereof as made by the said county board of supervisors, in order to produce a just relation between all the valuations of real estate in said county; but such commissioners shall in no instance increase the aggregate valuations thereof as made by said county board of supervisors." By sec. 1, ch. 212, Laws of 1882, the foregoing section was amended so as to provide that any city, town, or village might apply for the appointment of three commissioners "to review such action or decisions and to examine and determine what sum upon the hundred dollars should be added to or deducted from the aggregate valuations *of real or personal property or both as the case may be*, as therein made by such county board of supervisors, in order to produce a just relation between the valuations of real *or personal property or both* in said county *according as*

*such city, village or town may be aggrieved as to real or per-
sonal property or both;* but such commissioners shall in no
case increase the aggregate valuation throughout the county
*of such property real or personal or both as they are under
such application to enquire into above the aggregate valuation
of the same property* made by said county board of supervis-
ors." This section is incorporated into sec. 1077*a*, Stats.
1898, substantially *in hæc verba.* It may be said that since
the passage of ch. 212, Laws of 1882, there has been no
change in the law, so far as the questions arising in this
case are concerned.

From an examination of the original act of 1880 and the
amending act of 1882, as quoted above, the purpose of that
amendment is very plainly seen. That purpose was to pro-
vide that a review of the decision of the county board might
be had either as to real or personal property alone, without
involving the consideration of both, as the dissatisfied town
might elect. In all other respects the law stands to-day
substantially as it did when originally passed in 1880, and
the question is whether it contemplates that an application
for review by one town opens up the whole question as be-
tween all the towns, villages, and cities in the county, or
only raises the question whether the appealing town has
been overvalued. On this question we are without author-
ities in our own state, and we have found no other state
with a similar law. The tribunal is created by statute, and
consequently has no power save those which the statute,
reasonably construed, gives it.

A few cases have been before this court presenting cer-
tain questions with regard to this law, the principal ones
being *State ex rel. Brown Co. v. Myers,* 52 Wis. 628; *State
ex rel. Manitowoc v. County Clerk,* 59 Wis. 15; *Outagamie
Co. v. Greenville,* 77 Wis. 165; and *State ex rel. Ellis v.
Thorne, ante,* p. 81. The first of the above-named cases
arose prior to the amendment of 1882, and in it the law was

challenged as invading the constitutional right of local self-government, but the contention was overruled and the law upheld.  In the second case mentioned, a *certiorari* action was attempted to be brought by the chairman of a town, on behalf of the town, to review the proceedings of such a commission, and it was held that, in the absence of a vote by the electors of the town authorizing the commencement of the action, the action could not be brought and must be dismissed.  The court, after so deciding, proceeded to consider various questions presented by the return, none of which has any relevancy to the present contention.  In the third case mentioned the question presented was simply whether the county could recover the cost of the proceeding from the town which applied for the review in a case where the valuation of such town was not changed by the commission, but changes were made in the valuations of other towns and cities, and it was held that in such case the decision was "adverse" to the town making the appeal, and that, under the law as it then stood, such town must reimburse the county.  In the last case mentioned the contention was that the law was unconstitutional because it vested judicial power in a body which is not a court, contrary to sec. 2, art. VII, of the constitution, but the law was upheld.

Thus it is seen that none of the cases passes upon the question here presented, yet it certainly is worthy of note that in two of the cases, to wit, the case in 59 Wis. and the case in 77 Wis., the commission proceeded to raise and lower values throughout the entire county, without reference to any change made in the valuation of the particular town which applied for the commission, and this procedure passed unchallenged through the circuit court and this court, while in the case just decided it appears that increases were made in the valuations of all of the towns of the county save one; such increases, however, being just sufficient to equal the decrease made by the commission in the valuation of the

city which applied for the commission. In the case cited
from 52 Wis. the commission had not performed their du-
ties when the action was brought. So far, therefore, as can
be judged from the cases which have reached this court, it
would seem that the narrow view taken by the appellant of
the scope of the law before us has not been generally adopted
by the commissions which have been appointed under the
law, but that the broader view, that the whole subject is
opened up for examination and review, has been quite gen-
erally adopted and acted upon.

Turning to the consideration of the terms of the law itself,
we are quite well convinced that this latter view is the cor-
rect one. The section provides (Stats. 1898, sec. 1077a)
that any town, city, or village aggrieved by the " action or
decision as to real or personal property or both " of the
county board under Stats. 1898, sec. 1073, may apply for
the appointment of commissioners to review such " action
or decision." By reference to sec. 1073, it will be seen that
the action which the board takes under it is to determine
the value of all the taxable property in the county, and
make a list thereof, in which the full value of its property,
real and personal, is set opposite the name of each town,
and this list becomes the county assessment. This list, when
complete, forms the decision of the county board, and it
would seem that, if the commission is to review the " de-
cision," it must have power to examine into the whole of it,
and not merely the assessment of one town, which consti-
tutes only a part of the action or decision. Proceeding fur-
ther, however, with the section, we think this intent
becomes more clear. The commissioners are not only to
review such action or decision, but they are to " examine
and determine what sum upon the hundred dollars' should
be added to or deducted from the *aggregate valuations* of real
or personal property or both . . . *in order to produce a
just relation between all the valuations of real or personal*

*property or both in said county."* There is added to this
sentence the following clause, which is claimed to have a
limiting effect: " according as such city, village or town
may be aggrieved as to real or personal property or both."
It is plain, however, that the effect of this latter clause
is simply to limit the commissioners in their review to a
consideration of the value of that class of property con-
cerning which the appealing town complains, but not to
limit them to the consideration of the assessment of the ap-
pealing town alone. If the commissioners are to decide
what sum should be added to or deducted from the aggre-
gate valuations of property in the county board's list in order
to produce a just relation between all valuations of property
in the county, how can they do it, unless all the valuations
in the county are open to them for review and correction?
Would such language as this be used if their function was
simply to determine whether the assessment of the appeal-
ing town was too high, and, if so, to reduce it and distribute
the excess among other towns? We think not. Such an
intent could have been easily expressed in apt language.
It certainly cannot be said to be expressed in the law as it
now stands. Viewed in the light of reason and expediency,
it would certainly seem desirable that upon one application
the whole subject should be considered before one board.
Suppose, as might easily be the case, that several towns con-
sidered themselves aggrieved; would it be reasonable to
require each town to make its separate application, and, if
so, what is there to prevent the appointment of a different
set of commissioners upon each application, whose varying
judgments would throw the whole matter into intolerable
confusion? And, if the same board should be appointed
upon all the applications, then of what use is the making of
more than one application? That the application is con-
sidered as directly affecting every town in the county may
be gathered from the fact that notice of the application

must be given by the county clerk to every member of the
county board.

Some help upon the question of construction may also be
had from that part of the section which prescribes the effect
which the commissioners' decision shall have.    This part of
the section, after providing that the valuation of the com-
missioners shall be final, provides that in the next following
year "each town, village or city in said county shall be cred-
ited with an amount equal to the amount that it was charged
with on any excess of valuation as determined by said com-
missioners, and each town, village or city that has been
charged with a less amount of taxes on account of an under-
valuation, shall be charged in addition to all other taxes
with an amount equal to such deficiency, which amount
shall be carried out and collected as other taxes."    Certainly
this language seems to indicate the expectation that the
change and rearrangement of values would be general
through the county.

Our conclusion from consideration of the whole section is
that it must be construed as distinctly giving to the com-
missioners power to review all the valuations in the county,
either of real or personal property or both, as the applica-
tion may specify, and to raise or lower the valuation of any
town so far as necessary to produce a just relation between
all such valuations in the county, even though the valuation
of the town which applies for the commission may not be
changed.

2. As to the objection that all members of the board of
commissioners were not present all of the time during which
testimony was being taken, we think it is fully answered by
the provisions of subd. 3, sec. 4971, Stats. 1898, viz.:

"All words purporting to give a joint authority to three
or more public officers or other persons shall be construed
as giving such authority to a majority of such officers or
other persons, unless it shall be otherwise expressly declared
in the law giving the authority."

This section unquestionably applies to such a board as the one under consideration, and the law creating the board contains no contrary provision; hence two were authorized to act.

*By the Court.*— Judgment affirmed.