SAMUEL PIERCE, Respondent, v. CHARLES I. WRIGHT et al., Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, JUNE, 1872.)

Where the authority of the defendants in an action to restrain the issue of town railroad bonds, as a cloud upon title to real estate was set forth by an allegation that they were or claimed to be commissioners for the issue of the bonds, but that the plaintiff was ignorant of the truth of their claim. *Held*, that a temporary injunction was erroneously granted.

Where the statute makes affidavits and consents of tax-payers acknowledged and filed as required evidence of the facts therein contained, such facts may not be attacked collaterally.

Pierce v. Wright.

The remedy in case of inaccuracy of the affidavits and consents is by pro-
ceeding to correct the record or set it aside.

The provision requiring an affidavit of consents of a proportion of per-
sons, &c., upon the last assessment roll is satisfied, if the affidavit states
that the requisite number of consents have been obtained according to
the rolls of the last two years, consents having been obtained in both
years.

The act of 1871 (chap. 127) was, it seems, designed to extend the time for
procuring assents and to enable proceedings already begun to be com-
pleted.

APPEAL from an order continuing a temporary injunction
issued upon a complaint. The action was brought to have
the defendants, who are the commissioners of the town
of Webster, in the county of Monroe, perpetually enjoined
and restrained from issuing the bonds of the town for the
purpose of aiding in the construction of the railroad of "The
Lake Ontario Shore Railroad Company." The facts consti-
tuting the alleged cause of action, as stated in the complaint,
sufficiently appear in the opinion. A temporary injunction
was granted, which was continued at Special Term, and from
the order continuing the injunction this appeal was brought
to the General Term.

*J. N. Pomeroy,* for the plaintiff.

*J. C. Cochrane,* for the defendants.

Present—MULLIN P. J.; JOHNSON and TALCOTT, JJ.

By the Court—JOHNSON, J. Assuming, for the purpose
of reviewing the question presented by this appeal, that the
plaintiff, as the owner of real estate and a tax-payer of the
town of Webster, might have a standing in court to maintain
an action of this character upon a proper and sufficient com-
plaint (a question which we do not propose now to decide,
and in regard to which we express no opinion), it is clear we
think that upon this complaint the action, and consequently
the injunction, cannot be maintained. The remedy sought
by the action is preventive only. The complaint asks that

the defendants, Wright, Billings and Jennings, be enjoined and perpetually restrained from issuing bonds for, and in behalf of, the town of Webster, in Monroe county, to aid in the construction of the railroad of the "Lake Ontario Shore Railroad Company," on the ground that such bonds, if issued, will be a lien and incumbrance upon the plaintiff's property in that town, and a cloud upon his title, and inflict upon him a perpetual and irreparable injury. This is the head of equi table jurisdiction, under which the relief is sought. What the plaintiff attempts to show by the facts stated in his complaint, and insists that he has shown, is, that the defendants have no lawful right or authority to issue the bonds for and in behalf of the town, which they are threatening, and claiming the right, to issue.

The first difficulty is that the complaint does not show that these three individuals are officers of the town, having any authority by legal appointment, or color of appointment, to act as commissioners for the purpose of bonding the town. What the complaint states on this subject, is, that they " are or claim to be" such commmissioners, " but whether they were duly appointed as such commissioners this plaintiff is not informed and is not able to say."

Instead of stating that they are commissioners duly appointed and authorized to act and issue such bonds in a proper case under the statute, it ignores the fact altogether, and does not even allege that they are commissioners *de facto*, acting under color of any appointment.

All the fact that is stated, therefore, on this subject, is that they either are or claim to be commissioners, with an allegation of ignorance as to the truth of the claim. This is to be construed most strongly against the pleader, and it amounts but to this: Here are certain persons who say they are commissioners of the town, but whether they are or not we neither affirm nor deny. It does not appear, therefore, from any fact stated in the complaint, that there is any foundation for their claim, and the bonds, should these defendants issue them, would be utterly void and in no respect binding upon the

Pierce *v.* Wright.

town, or an apparent lien or cloud upon the plaintiff's estate. or title. An attempt, or a threat, by an individual or individuals, to do an act, which, when done, would be a nullity, neither binding upon nor injurious to any one, according to the allegations of fact in a complaint, or, for aught which appears there, lays no foundation whatever for an action to restrain the commission of such act. But there is a still more serious difficulty. The plaintiff alleges and charges in the complaint that although it appears by the consents filed, and the affidavits of the assessors, that consent has been obtained of persons owning more than one-half of the taxable property of said town, and of more than one-half of the tax-payers, as appears by the last assessment roll, yet, in fact, some of the persons signing the consents were not tax-payers of the town, and did not own the property assessed to them, and that the owners have never given their consents; and that, deducting the names of such persons so signing consents, the remaining consents would represent much less than one-half the taxable property of the town; and also, that several persons signed consents who did not own all the property assessed to them on the assessment roll, and only a portion thereof, and that one-half of the tax-payers and property-owners of the town have not given the necessary consents to the bonding of said town.

This raises the question whether every or any individual tax-payer in the town may challenge and assail the facts as they appear from the record, which the statute makes evidence, by action, in this collateral way. The statute provides how the facts necessary to authorize the issuing the bonds of the towns shall be ascertained and determined. Consent must be obtained in writing and proved by a subscribing witness in the form and manner prescribed, or acknowledged as deeds are required to be acknowledged for the conveyance of real estate, "of persons owning more than one-half of the taxable property assessed and appearing upon the last assessment roll of such town, and a majority of tax-payers, as appears by such assessment rolls respectively." These facts,

when ascertained, are to be proved by the affidavits of the assessors of the town, or a majority of them, and it is made their duty to make such affidavit. The consents and the affidavit, with a copy of the assessment roll, are then to be filed in the office of the clerk of the county, and in the office of the clerk of the town, " and the same, or a certified copy thereof, shall be evidence of the facts therein contained and certified in any court of the State, and before any judge or justice thereof." The statute makes this evidence of the jurisdictional and all other facts. It is in the nature of a record and imports absolute verity, so long as it remains as a record upon the files of the county and town clerk's offices. The object of this action is not to correct the record so as to make it conform to what the plaintiff claims the facts to be, but to prevent the commissioners from acting and performing the duty imposed upon them by law, upon what the statute declares shall be evidence in all places throughout the State.

The law makes it evidence of the facts " therein contained and certified," before this court and every other in the State, and for all purposes. The statute does not make it *prima facie* evidence merely, but evidence absolutely and unqualifiedly. The issue which the plaintiff in his complaint tenders is that this record is a false witness, which does not certify the truth, and should not therefore be regarded and acted upon, or held as evidence of the facts, as the statute ordains.

In other words, we are called upon to say that what the law makes evidence is no evidence; and that public officers shall not act upon it, and perform their duties in accordance with it, as the law requires.

It is quite obvious that this cannot be done in this way. It would be quite intolerable to allow every tax-payer in the town to drag public officers into court in this way, and put them to the expense and trouble of defending the public records, and proving them to be true, should evidence be allowed to be given to the contrary. The plaintiff has

plainly mistaken his remedy. Public records cannot be assailed and controverted in this collateral manner.

His only remedy was by a direct proceeding to correct the record, if it was in any respect incorrect, and reform the character of the statutory witness, so that it should speak " the truth, the whole truth, and nothing but the truth;" or to set it aside, and get rid of it altogether. This principle was established in the case of *The People* v. *Zeyst* (23 N. Y., 140). It was there held that it could not be proved by parol, in an action, that an official record was not true.

Starkie, in his work on Evidence, thus lays down the rule : " When written instruments are appointed by the immediate authority of the law, or by the compact of the parties, to be the permanent repositories and memorials of truth, it is a matter both of principle and of policy to exclude any inferior evidence from being used, either as a substitute for such instruments, or to alter or contradict them." (2 Stark., 544, 5th Am. ed.) Here the statute has made this record " The *repository and memorial* of the truth," and the witness thereof. This principle is entirely consistent with the ruling in the case of *Starin* v. *The Town of Genoa* (23 N. Y., 439). In that case it was held that parol evidence was competent to show that the written assent of two-thirds of the tax-payers of the town had not been obtained, and thus contradict the certificate of the commissioners, expressly upon the ground that the statute in that case had not made the certificate evidence.

But the contrary of that rule, even in the class of cases arising under that statute, has been held in the United States Circuit Court. Whether the plaintiff's remedy was by a common-law certiorari, to bring up the record and proceedings for review, or by some other process to correct or get rid of the record, it is unnecessary now to decide. It is enough that it cannot be controverted or its verity challenged or put in issue in this way, if, upon its face, it is fair, and in compliance with the statute. This view is in accordance with the decision of the Court of Appeals in the case of *Howland* v.

*Eldredge* (43 N. Y., 457). The ground of the decision in that case was that the examination of the consents, and the assessment roll, for the purpose of ascertaining and determining whether a majority of the tax-payers had consented to the bonding of the town, was in the nature of a judicial proceeding, and that the affidavit embodying the determination was conclusive evidence of the fact so ascertained and determined.

The principle is, that the verity of a record, or document, or other matter which the law makes evidence, is not an issuable fact, constituting a cause of action, in a collateral action, unless such record, document or other matter is by law made mere *prima facie* evidence, which is not the case under the statute in question. The statute makes the consents, copy of the assessment roll, and affidavit, when filed, evidence, and gives no right of appeal to any other body or tribunal. No one would think of bringing and attempting to maintain an action to prevent the execution of a judgment or decree, on the ground that the verdict or finding was against the weight of evidence, and contrary to the real facts existing and involved in the issue. And yet this is precisely analogous in principle to such an action.

The complaint also alleges that the affidavit of tne assessors shows that the requisite number of consents have been obtained as appears by the assessment rolls of 1870 and of 1871, and this, it is claimed, is not in accordance with the statute. The point is that the last assessment roll in the year in which any consents were obtained must govern, and could alone be referred to in making up the affidavit for record. But we are of the opinion, in a case situated as this was, that both assessment rolls may properly be referred to. A portion of the consents were, as appears by the complaint, obtained in 1870, and the residue in 1871, and the affidavit shows that the requisite number of consents had been obtained, as appeared by both rolls. If it so appeared by both rolls, it necessarily so appeared by the last. The con-

sents obtained before 1871, and in the year 1870, were, we think, properly filed and counted.

The act of 1871, Session Laws of 1871, chapter 127, amending the act of 1869, under which the consents in 1870 were obtained, was evidently designed to extend the time for procuring assents, and to enable proceedings to be completed, which had already been begun, but which had not been completed when the amendatory act was passed. It is of no consequence whatever who procured the consents to be signed by the tax-payers. If their consents were obtained, and proved or acknowledged according to the statute, as it is to be presumed they were, that is sufficient.

It should be observed that there is no allegation in the complaint that the assessors had not jurisdiction to entertain the proceedings before them, and to make a determination, nor that they had been guilty of any fraud in their action in the premises.

We are of the opinion, therefore, that the facts stated in the complaint do not constitute a cause of action in favor of the plaintiff against the defendants, or either of them, and that the order continuing the injunction was erroneous and should be reversed, and the order granting the injunction vacated, with ten dollars costs of the appeal.

Order reversed.