116 PEOPLE ex rel. N. Y. AND C. R. R CO. v. HUTTON.

THIRD DEPARTMENT, MAY TERM, 1879.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE NEW YORK AND CANADA RAILROAD COMPANY, Respondent, v. WILLIAM HUTTON and others, COMMISSIONERS, ETC., OF THE TOWN OF PUTNAM, Appellants. *

1867 — *chapter* 874, *section* 2 — *affidavit of an assessor in town bonding proceedings — not conclusive, but subject to impeachment — The taxpayers may impose conditions.*

Proceedings to bond a town in aid of the construction of a railroad having been instituted, the county judge appointed McArthur, Easton and Hutton commissioners, to procure the requisite consents and take the necessary proceedings; McArthur having refused to accept, one Meiklejohn was appointed in his place. The consents of the taxpayers, required by the statute, were contained in three separate papers, two of which consented that McArthur, Easton and Hutton might subscribe for the stock and issue the bonds; and one that Easton and Hutton might do so. The stock was, in fact, subscribed for by Meiklejohn, Easton and Hutton.

*Held,* that the taxpayers might, in giving their consent, impose certain conditions, compliance with which was essential to the validity of the subscription for the stock.

That the consents given in this proceeding did not authorize a subscription by Meiklejohn, Easton and Hutton.

Section 2 of chapter 874 of 1867, provides, that the fact that the requisite number of taxpayers have signed the petition "shall be proved by the affidavit of one of the assessors of such village or town, indorsed upon or annexed to such consent in writing, and filed and recorded with said consent; and the original consent and affidavit, or a copy thereof, certified by the clerk of the county in whose office it is required to be filed, shall be legal evidence of the facts contained therein, and shall be admitted as such in any court of this State, and before any judge or justice thereof."

*Held,* that the statute did not render such consent and affidavit incontrovertible and conclusive evidence of the facts therein stated and recited, and that they were but *prima facie* evidence of such facts, and were open to rebuttal by competent proof and to impeachment for falsity.

APPEAL from a judgment in favor of the relator, entered upon the trial of this action by the court without a jury.

The action was brought to compel the defendants, by *mandamus,* to issue to the relator certain bonds of the town of Putnam, in aid of the relator's road.

The principal question in the case was as to the effect of what purported to be the consent of a majority of the taxpayers to the

* See *People ex rel. N. Y. and C. R. R. Co.* v. *Barrett,* post p. 206.

PEOPLE ex rel. N. Y. AND C. R. R. CO. v. HUTTON. 117

THIRD DEPARTMENT, MAY TERM, 1879.

issue of the bonds, and the affidavit of one of the town assessors thereto annexed.

Section 2 of chapter 874 of 1867, under which the proceedings were had, provides, among other things, as follows, viz. : " Provided, however, that no subscription to stock shall be made, or bonds issued as aforesaid, until the consent in writing, specifying the amount of such subscription and bonds to be issued, be first obtained of a majority of the taxpayers (or their legal representatives) appearing upon the assessment-roll of such village or town for the year 1866, representing a majority of the taxable property therein, which consent shall be proved or acknowledged in the same manner as signatures to conveyances of real estate, and shall be filed and recorded in the clerk's office of the county in which the said village or town is situated, which fact that a majority of the taxpayers have so consented shall be proved by the affidavit of one of the assessors of such village or town, indorsed upon or annexed to such consent in writing, and filed and recorded with said consent ; and the original consent and affidavit, or a copy thereof certified by the clerk of the county in whose office it is required to be filed, shall be legal evidence of the facts contained therein, and shall be admitted as such in any court of this State and before any judge or justice thereof."

*James Spencer*, for the appellants.

*Tanner & Potter*, for the respondent.

BOCKES, J. :

The relators, the New York and Canada Railroad Company, by this proceeding obtained the judgment of the court, awarding a mandamus against the defendants, commanding them as commissioners of the town of Putnam, Washington county, to execute and deliver to such railroad company the bonds of the town to the amount of $12,000, on the delivery to them of the certificate of such company, entitling the town to 120 shares of its capital stock, of the par value of one $100 per share. This proceeding was instituted on the alleged ground that the town was regularly and in due form bound, by the action of a majority of its taxpayers and of said commissioners, to issue the bonds to aid in the

construction of the road; which action, as was alleged, was taken pursuant to the provisions of the statute in that regard. The commissioners refused to issue the bonds, insisting that the proceedings taken under the statute for bonding the town were irregular, informal and void; hence, imposed upon them no obligation to do what was demanded of them. An issue was formed, and after trial before a justice of this court, without a jury, the mandamus asked for was awarded, and judgment thereupon having been entered, an appeal was taken to the General Term. On the part of the defendants it was insisted: (1) That the proceedings taken under the statute for bonding the town, evidenced by the papers presented at the trial, were informal and void on their face; hence, gave the commissioners no authority to subscribe for the stock, and imposed no obligation upon them to issue the bonds; and (2) if this were otherwise then, that proper evidence was offered on the trial and rejected; which, if it had been admitted, would have shown that those proceedings were unauthorized by the taxpayers of the town, and were false in fact and void. It may be well to see precisely how the case stood on the evidence submitted by the relators. The relator relied upon the evidence afforded by the documentary proof (so called) filed and recorded in the county clerk's office, showing the proceedings taken for the bonding of the town. Those papers were: (1) An application purporting to have been signed by more than twelve persons, representing themselves therein to be freeholders and residents of the town, to the county judge, asking for the appointment of three commissioners, pursuant to the statute, entitled "an act to facilitate the construction of the New York and Canada Railroad Company," etc.; (2) the appointment by the county judge of Wm. McArthur, George Easton and Wm. Hutton, such commissioners; (3) the declension of McArthur to act as such commissioner; (4) the application to the county judge for the appointment of a commissioner in the place of McArthur; (5) the appointment of A. G. Meiklejohn in his place; (6) the consent of various persons representing themselves therein to be taxpayers of the town, whose names appeared upon the assessment roll of the town for the year 1871, consenting that McArthur, Easton and Hutton, as commissioners, might subscribe to the capital stock of the railroad in the sum of $12,000,

PEOPLE ex rel. N. Y. AND C. R. R. CO. v. HUTTON. 119

THIRD DEPARTMENT, MAY TERM, 1879.

and that said commissioners might issue bonds of the town therefor; (7) an affidavit of the assessor of the town attached, to the effect, that he was at the time such assessor, and was such in the year 1871 ; and that the consent was subscribed by a majority of the taxpayers, representing a majority of the taxable property on the assessment roll of the town for the year 1871 ; (8) and lastly, a subscription by Easton, Hutton and Meiklejohn, as commissioners, for 120 shares of the stock of the railroad company, with an agreement to pay the company therefor in the bonds of the town. It was admitted that the railroad was completed from Whitehall to Ticonderoga before January 1, 1875, and that the aggregate amount of taxable property, appearing on the assessment roll of the town for the year 1871, was $167,567 ; and, further, that the bonds had been demanded of the commissioners, and that they refused to issue and deliver them. It should be noted, as it is deemed an important fact, that the consent in writing of the taxpayers above alluded to, and to which the affidavit of the assessor was attached, was given in and by three separate papers ; two of which purported to give consent that McArthur, Easton and Hutton might subscribe for the stock and issue the bonds ; the other purported to give consent that Easton and Hutton might perform those acts. There was no evidence of any consent in writing that Meiklejohn might act in that regard, either alone or with the others named, as commissioners. Numerous objections were interposed by the defendant's counsel to the admission in evidence of the papers above alluded to, but it is not deemed necessary to notice them in detail. The purport of them was that each paper was informal, unauthorized and void ; hence that the proceedings for the bonding of the town conferred upon them no authority to act as commisers, and put them under no obligation to issue the bonds demanded of them.

The proceedings taken to bond the town were entirely statutory. It is, therefore, only necessary to suggest that all the steps required to be taken by the law were needful to confer authority upon the commissioners to subscribe for the stock and to issue the bonds. The validity and binding force of the proceedings depended on a strict observance of all the requirements of the statute, and they were without authority and void, unless all the provisions of the

120 PEOPLE ex rel. N. Y. AND C. R. R. CO. v. HUTTON.

Third Department, May Term, 1879.

law, step by step, were complied with in every essential particular. Nothing could be inferred in support of them, but all essentials were to be established by affirmative proof. (*The People ex rel. Rogers* v. *Spencer*, 55 N. Y., 1; *The People ex rel. Green* v. *Smith*, 55 id., 135; *The People ex rel. Haines* v. *Smith*, 45 id., 772; *The People ex rel. Freeman* v. *Hulburt*, 46 id., 110.) In the last case cited, it was laid down that the authority conferred by the act must be exercised in strict conformity to, and by a rigid compliance with the letter and spirit of the statute. The taxpayers, too, may impose a condition to the subscribing for stock and to the delivery of the bonds, and when a condition is imposed, the commissioners appointed to subscribe for the stock and to issue the bonds are subjected in their action to the condition. (*Falconer* v. *The B. and J. R. R. Co.*, 69 N. Y., 491.) True, in the case cited, the statute under examination gave permission to the taxpayers to affix a condition. But without such permission being given by law, the taxpayers may affix one which shall be binding, or the affixing of it will render their action void. There can be no good reason why they may not affix a condition without express statutory authority so to do. Certainly, if a condition be affixed, it must be observed, or the authority made conditional upon its observance must be inoperative. Judge Folger says in the case cited: "Here is the grant of power from the taxpayers, through the county judge to the commissioners. It confers nothing more than is expressed, or than is necessarily incident to that which is expressly conferred, or is given by statute law in addition thereto." These remarks will apply to every case where an agency is created and authority is conferred. If the authority be void because of the conditions, very well. But if recognized as valid, the condition must be observed. So, then, the authority here given by the taxpayers to the commissioners is the basis of their right to act. It is their charter of power. Now, to whom was power here given by the taxpayers to subscribe for stock and to issue bonds, which should bind the town? The papers show on their face that McArthur, who was originally appointed commissioner, declined to act, and Meiklejohn was appointed in his place. The commissioners then authorized to act were Easton, Hutton and Meiklejohn, and they, in fact, made the subscription

for the stock, and agreed for the town to issue the bonds therefor. But the consent given by the taxpayers to perform these acts in behalf of the town was not given to them. The consent, as evidenced by two of the papers, was that McArthur, Easton and Hutton might act for the town in that behalf; and by the other paper, the authority was conferred by the consent of the taxpayers who subscribed it, upon Easton and Hutton only. There was no evidence of any consent given by any taxpayers that Meiklejohn might join with Easton and Hutton in the acts by which the town was to be bound. The authority to bind the town rested upon the consent of the taxpayers, and such consent conferred no authority, save as it was exercised in conformity with the terms of the consent. The same rule would apply here, as in the case of a condition attached to a power conferred in ordinary cases, certainly with equal, if not with greater force. So the subscription by others than those authorized to make it, and their agreement to issue the bonds of the town, for the amount subscribed, were without authority and void.

But there is another ground of error which would require a new trial, even if the difficulty above considered, and all others urged against the papers for defects appearing on their face, were out of the way. The defendants on the trial offered evidence to impeach the documentary proof (so-called) put in on the part of relator; this evidence was rejected; the court holding in effect that such documentary proof was conclusive of the facts therein recited, and stated that such evidence could not be contradicted or impugned. This ruling was, as we think, erroneous. The law, it is true, declares that the consent of the taxpayers with the affidavit of the assessor indorsed thereon or annexed thereto, when duly acknowledged, filed and recorded in the clerk's office, "shall be legal evidence of the facts contained therein, and shall be admitted as such in any court of the State, and before any judge or justice therein." This provision was introduced for the purpose of avoiding the necessity of proving the contents of the papers by oral or common law evidence. Were it not for this provision the rule laid down in *Starin* v. *The Town of Genoa* (23 N. Y., 439), and in *The People* v. *Mead* (24 id., 114; also, 36 id., 224), would prevail. The ruling in *Starin's Case* was that an affidavit made, filed and recorded, as

was the affidavit in this case, was not evidence of the requisite consent, in the absence of a provison of law making it such. Judge GROVER says, in *The People* v. *Mead* (36 N. Y., 229), that the affidavit must, in accordance with the decision in *Starin's Case*, and in *The People* v. *Mead*, be regarded as furnishing no evidence of itself of the requisite assent of the taxpayers of the town. But in the case in hand there is a provision of law making the consent, with the assessor's affidavit indorsed or annexed, when duly acknowledged, filed and recorded, "legal evidence of the facts contained therein, 'to be' admitted as such in any court of this State, and before any judge or justice thereof." But, by making the papers legal evidence of the facts contained therein, the law did not make them indisputable and conclusive evidence of such fact. They were to be admitted as legal evidence. Thus they were raised by law to the dignity of presumptive evidence, but like ordinary legal evidence they were open to contradiction and impeachment for falsity. In *The People ex rel. Martin* v. *Brown* (55 N. Y., 180) the law, as in this case, made the consent of the taxpayers with the assessor's affidavit, indorsed or annexed, when acknowledged, filed and recorded in the proper clerk's office, "evidence of the fact therein contained," to be "admitted in evidence in any court of this State, and before any judge or justice thereof." It was there held per ALLEN, J. that the provisions of law did not make the evidence conclusive. While Judge ALLEN gave a dissenting opinion, his reasoning and conclusions on the point here under examination were not controverted or impugned by any member of the court. The reasoning of the learned judge, and his citation of authorities, leaves nothing to be added in vindication of his conclusion. The town should not be concluded by a false record by whomsoever made up. This would be contrary to natural justice. A judicial record imparts absolute verity only, after jurisdiction has been shown both of the person and subject-matter. In such case the parties have had, or are deemed to have had, their day in court, and then they are concluded by the record in all collateral actions and proceedings wherein the matters determined thereby may come in question. But it is a doctrine applicable to all legal proceedings against persons, property and municipalties, that a want of jurisdiction in a court or officer may be shown to invalidate them.

So it was said in *Adams* v. *The S. and W. R. R. Co.* (10 N. Y., 334), that when the party " offered to show by evidence that the 'record' was untrue, * * * and that the recitals contained therein were false, the learned justice who tried the cause should have received the evidence." It was laid down in *The Chemung Bank* v. *Judson* (8 N. Y., 254) that the jurisdiction of any court exercising authority over a subject may be inquired into in any court, where the proceedings of the former are brought by a party claiming the benefit of them. The authorities are numerous to the effect that jurisdiction is always open to inquiry. As regards special proceedings, like this now under consideration, when the authority to take them is special, being expressly given and limited by statute, they are open to attack for any non-observance of the provisions of the law on which they depend for support; and especially may the evidence submitted to support their integrity be impeached for falsity. The case then, in this view of it, becomes analogous to that wherein a challenge of a judicial record for want of jurisdiction is interposed. I am aware that Judge GROVER said, in *The People ex rel. Yawger* v. *Allen* (52 N. Y., 540), that the affidavit of the assessor, in a case like this, was in the nature of a judgment or decision determining the existence of a fact. But that learned judge in *The People* v. *Mead* (36 N. Y., 229) yielded his assent to the ruling of the court that the affidavit was not conclusive of the facts sworn to in it. It may be noted that Judge GROVER does not say in *The People* v. *Allen* that the affidavit is in effect a judgment or decision, and conclusive of the facts stated in it; only that it is in the nature of a judgment. In the later case of *The People ex rel. Martin* v. *Brown* (55 N. Y., 180) Judge ALLEN says, in speaking of the *operative effect* of the affidavit, that although the question had been incidentally before the court, yet in no case had it been held that the affidavit was under all circumstances conclusive and incontrovertably evidence of the fact stated therein, except in the single case of *The People ex rel. A. and S. R. R. Co.* v. *Mitchell* (35 N. Y., 551), and then under a statute which declared that such proof should be *valid and conclusive* in all courts and for all purposes. The decision in *Pierce* v. *Wright* (6 Lans., 306) is in conflict with the cases above cited in the Court of Appeals, and was decided before the decision in

*The People ex rel. Martin* v. *Brown* appeared or was made. The same may be said of the decision in *The People ex rel. Akin* v. *Morgan* (65 Barb., 473), and also in *Corwin* v. *Campbell* (45 How. Pr., 9). In this connection it may be suggested, too, that if the affidavit be an adjudication, then the assessor must be protected against perjury in making it, although it be false in every particular, and made by him with knowledge of its falsity ; for it is the settled rule that one who acts judicially under authority of law cannot be made answerable either civilly or criminally for his judicial determination, however erroneous it may be, and however malicious the motives which produced it. The only remedy in such case is by impeachment. Still if the affidavit be considered as a judgment, it may then be assailed for want of jurisdiction. But we are of the opinion that the case only presents the question, whether by the statutes the papers were made more than " legal evidence," more than *prima facie* evidence of the facts stated in them ; that they were so made *prima facie evidence* is manifest from a fair reading of the law. It provides that, when acknowledged, filed and recorded, they shall be evidence to be " admitted as such in any court of the State, and before any judge or justice thereof ; " " that is," admitted like any other legal evidence, with like force and effect. The statute does not declare that they shall be incontrovertible and conclusive evidence. If this had been intended, it is but fair to assume that it would have been so expressed. In other statutes where this was intended, it has been so expressed ; and here again I would call attention to the reasoning of Judge ALLEN in *The People ex rel. Martin* v. *Brown* (55 N. Y., on page 195), again suggesting that his remarks seem unanswerable, and for aught that appears to the contrary were satisfactory to every member of the court. In conclusion, we are of the opinion that the documentary proof (so called) introduced by the relator was not incontrovertible and conclusive evidence of the facts therein stated and recited, but afforded but *prima facie* evidence of such facts, and were open to rebuttal by competent proof, and to impeachment for falsity. The contrary ruling by the learned judge on the trial was, as we think, erroneous. In view of this conclusion, as well as of that reached on the point first above considered, there must be a new trial.

Judgment reversed; new trial granted; costs to abide the event.

BOARDMAN, J. :

In this direct proceeding, on the part of the railroad company against the town to compel the issuing of the bonds, I do not think the assessor's affidavit is conclusive; but evidence should have been allowed to impeach its verity, to show irregularities, to establish fraud, mistake or corruption. As between these parties in this proceeding the affidavit may be attacked, and, if possible, overcome. In rejecting such evidence I think there was error, for which a new trial should be granted, and, therefore, concur in the result of the foregoing opinion.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment reversed; new trial granted; costs to abide event.