## NEW-YORK COMMON PLEAS.

JACOB D. C. OUTWATER agt. THE MAYOR, &c., OF THE CITY OF NEW-YORK.

The *fifth section* of the act of 1859, (*Laws* 1859, *p.* 1127), authorizing the comptroller of the city of New-York to take all proper and necessary means to open and reverse any judgments against the city, which he shall have reason to believe was obtained by collusion or founded in fraud, *is not unconstitutional.*

An affidavit of the comptroller, that he has reason to believe that the judgments were obtained by collusion and fraud, is not of itself sufficient to entitle him to have the judgments opened or reversed. It is sufficient, however, to entitle him, on application to the court, to "take all proper and necessary means to have them opened or reversed;" but it rests in the sound discretion of the court whether the application will be granted or not. (*This case, and the three following, were judgments obtained against the city upon report of sole referees, and were severally set aside, and new trials ordered, upon the facts disclosed in the respective cases.*)

*New - York, Special Term, April,* 1860.

WILLIAM CURTIS NOYES, *for comptroller.*

DALY, F. J. It is objected to this motion, that the fifth section of the act, (*Laws of* 1859, *p.* 1127), under which it is made, is unconstitutional. The constitution declares (*Art.* 3, § 16,) that "no private or local bill, which may be passed by

the legislature, shall embrace more than one subject, and that shall be expressed in the title." The title of the act in question is, "An Act to Authorize the Supervisors of the City and County of New-York to raise Money by Tax." The first and second sections authorize the supervisors to raise a specified sum by tax, to be applied to certain objects and purposes which are named in the act. The third section authorizes them to direct the comptroller to issue revenue bonds to an amount sufficient to pay any judgment obtained against the city, other than those mentioned and provided for in the second section, and to satisfy claims of members of the police force for back pay, or arrearages of salary, and to raise by tax the next succeeding year—that is, in 1860—a sum sufficient for the redemption of the above-mentioned bonds, with interest; and the *fifth* section, the one in question, authorizes the comptroller to take all proper and necessary means to open and reverse any judgments against the city, which he shall have reason to believe was obtained by collusion or founded in fraud, and for that purpose to use the name of the defendants, and to employ counsel.

I think the fifth section comes clearly within the subject of the act, as expressed in its title. The amount of the revenue bonds, and the amount of the tax to be raised by their redemption, will depend upon the amount of the judgments to be paid; and if any of those judgments should be reversed, and judgment given for the city; or if any of them should be reduced in amount, through the steps which the comptroller is authorized to take by this section; the amount for which revenue bonds are to be issued, or at least the amount to be raised by tax, in 1860, for their redemption, will be proportionably lessened. A proviso, therefore, in an act authorizing the supervisors to raise money by tax, which contemplates the possible reduction of the amount to meet which the tax is to be imposed, is as much a part of the subject of the act, indicated by the title, as any other part of it. If the act had named the sum which was to be raised to meet the claims of the police force, and the judgments referred to, there might be some-

doubt; but, as it is left to the supervisors to ascertain the amount for which it will be necessary to issue revenue bonds, as well as the amount necessary for their redemption, and as the obligations for which provision is to be made, may be reduced through the means which the comptroller, by this section, is authorized to take, it is very clear to my mind that this provision appertains to, and forms a part of, the whole subject of the act.

An affidavit of the comptroller, that he has reason to believe that the judgments were obtained by collusion and fraud, is not of itself sufficient to entitle him to have the judgments opened or reversed. His belief, in that respect, shown to the court, is sufficient to entitle him, in the language of the act, to " take all proper and necessary means to have them opened or reversed," but it rests in the sound discretion of the court whether the application will be granted or not.

The judgment in this case was for damages arising from the settlement and cracking of the plaintiff's buildings, the referee finding that the foundations were weakened by water flowing into the cellars of the buildings from one of the city sewers— the mouth of the sewer being obstructed. The case, which was eminently one to be tried by a jury, was referred, by the written consent of the corporation counsel, to a single referee. The only witness who testified that the buildings settled and cracked, in consequence of the water flowing into the cellar from the sewer, was the plaintiff himself. A builder was called to prove the damages, whose testimony is embraced in four lines—that he had examined the buildings, and that it would cost all of five thousand dollars to put them in the same condition, as nearly as may be, as they were in before the water came in. The counsel of the corporation was not present at the hearing before the referee, but one of his assistants acted in his stead. No witnesses were called on behalf of the city. No examination of the buildings, on the part of the city, either as to the cause of the injury or as to the extent of the damage, appears to have been made; for, I take it, from the diligence shown in procuring affidavits to resist this motion, that if it had been the fact it would have been shown. The builder was not

asked by the assistant of the corporation counsel whether he made any estimate of the damage, and of the cost and expense of putting the buildings in the same condition as before, as near as might be; or how he arrived at the sum of five thousand dollars, whether it was a mere general guess, or founded upon a positive and accurate estimate, such as it might be presumed he would carefully make if about to enter into a contract to restore the buildings, as far as possible, to their former condition: and upon the loose, general testimony of this builder, and the testimony of the plaintiff as to the cause of action, the case was submitted, on the part of the city, to the referee, who gave judgment for the whole amount claimed in the complaint —that is, $5,000.

The comptroller swears that he knows that he will be able to prove, if a new trial is granted, that the houses were built cheap, for tenement houses, upon made soil, recently filled in from the waters of the East river, and were liable to settle and crack; that other buildings in the same neighborhood have also settled and the walls cracked, arising principally from the character of the newly made soil upon which they were erected. And this fact, certainly a very important one, is neither controverted nor questioned in the affidavits made on behalf of the plaintiff. The comptroller further swears that he knows that he will be able to prove that the damages sustained by the plaintiff, in reference to the buildings, did not exceed $500; that he has caused them to be examined by competent builders, to ascertain the amount of the actual damage sustained by the plaintiff—and will be enabled to show that the principal damage was done to the rear walls; that no other damage of any importance was done to the property; that the whole damage does not exceed the sum before mentioned, and that such builders offer to rebuild the entire rear walls for the sum of $1,000, and completely restore the plaintiff's property to its former condition.

The plaintiff swears that he met the persons sent by the comptroller; that they only examined the outside of the houses, and did not go through them, or examine the side

walls; and that he proposed to show them other damages or injuries, which they declined to examine; that the damages are not confined to the rear walls, but that all the walls of all the houses are injured. He has also submitted the affidavits of four builders, who swear that they have examined the buildings, and that it will cost five thousand dollars to replace the damage done to them by the overflow of the sewer; but this testimony is of the same general character as that of the builder who testified on the trial. It does not appear that any one of them made any estimate of the actual cost and expense, nor do they show how they reach a sum expressed in round numbers at five thousand dollars. The plaintiff and his attorney also swear that the judgment was not obtained by collusion, and is not founded in fraud; but was fairly recovered.

I think, upon the facts here presented, that we are called upon to open the judgment, and order a new trial. The discretion with which courts are clöthed to order new trials, is very well expressed by Mr. Graham, after a full review of the authorities:—"Error," he says, "is the strict right of the party relying upon the legal conviction of the court; but motions to avoid verdicts take a wider range, and are, for the most part, addressed to the discretion of the judge, upon the equity and conscience of the case." (*Graham on New Trials, 1st ed.*)

In view of the facts submitted on the part of the comptroller, and of the manner in which the case was defended, I think we are called upon to interpose for the protection of the interest of the city, and I shall therefore direct that the judgment be set aside and a new trial ordered.

WILLIAM JOYCE agt. THE MAYOR, &c.

JOHN KELLY agt. THE MAYOR, &c.

CHARLES BRUSH agt. THE MAYOR, &c

All the questions of law involved in the respective motions made in these causes, have been decided in the preceding case of *Outwater* agt. *The Mayor, &c.*; and the same decision will be rendered here.