THE PEOPLE ex rel. CHAS. H. LEE, NEHEMIAH CASE and GEORGE W. TEW, Respondents, *v.* THE BOARD OF SUPERVISORS OF THE COUNTY OF CHAUTAUQUA, Appellants.

A clause in the general act of the legislature "making appropriations for certain expenses of government, and for supplying deficiencies in former appropriations," appropriating from the State treasury the sum of $10,000 for the construction of a bridge over the Cattaraugus creek at a particular locality, under the direction of certain commissioners named, further provided, that the supervisors of the counties of Erie and Chautauqua should assess upon their respective counties a moiety of such further sum, not exceeding $10,000, as the said commissioners should certify to be necessary for the completion of the bridge.—*Held*, that the latter provision was unconstitutional and void.  As to this provision, the bill is a "local" bill, and the subject of it is not expressed in the title.  It is also in conflict with the constitution in that the title embraces more than one subject, which renders the private or local provisions embraced therein invalid.

An act is local within the meaning of the constitution, which, in its subject, relates but to a portion of the people of the State or to their property; and may not, either in its subject, operation, or immediate and necessary results, affect the people of the State or their property, in general. —Folger, J.

(Argued October 11th, 1870; and decided October 18th, 1870.)

This is an appeal from an order of the General Term of the late eighth judicial district of the Supreme Court in affirming an order of a Special Term, held in Erie county, directing that a peremptory mandamus issue to the appellants.

The facts of the case are these: In the year 1868, there was passed by the legislature of the State, the annual act, making appropriations for certain expenses of government, and for supplying deficiencies in former appropriations. It is chapter 717 of the Laws of 1868, and became a law on the eighth day of May, 1868. Its title is this: "An act making appropriations for certain expenses of government and for supplying deficiencies in former appropriations." It appropriates money from the State treasury for a large number of objects, and among other provisions in it is the following: "For the construction of a bridge across the Cattaraugus creek at upper Irving, near the Indian reservation, under direction of Charles H. Lee, Nehemiah Case and George W. Tew, $10,000. The supervisors of the counties of Erie and Chautauqua, shall assess upon their respective counties a moiety of such further sum, not exceeding $10,000, as the said commissioners shall certify to be necessary for the completion of the said bridge. The commissioners shall have power to obtain any necessary materials for building said bridge of the Seneca nation of Indians." This is all upon this matter which is to be found in the statute. The persons named in this provision, the relators in this case, assumed the direction of the construction of the bridge. They certified to the board of supervisors of Chautauqua county, that the amount necessary for the completion of it in addition to the sum appropriated from the State treasury, was the further sum of $10,000, and that it was necessary for the board to

assess upon that county a moiety of such further sum.    The board refused to assess.    An alternative mandamus was applied for and was granted.    To this the board made return admitting all the facts, but alleging, as a justification of a refusal to assess, the ground that the above quoted provision from the act " is a local law, and that it is not referred to in the title of the said act "; meaning by this, that the provision is local, and the subject of it is not expressed in the title of the act in which it is contained. . In opposition to the motion for a peremptory mandamus this was the ground taken.    On appeal from the order of Special Term, granting a peremptory mandamus, it was the ground taken at General Term, and it is the one insisted upon here.

*Walter L. Sessions* for the appellants, cited *People v. Hills* (35 New York, 449); *People v. O'Brien* (38 N. Y., 193); *The Town of Fishkill* v. *Fishkill Plk. Road Co.* (22 Barb., 634); *People ex rel. Fairling* v. *Commissioners of Highways of Palatine* (53 Barb., 70); *Pullman* v. *Mayor, &c., of New York* (54 Barb., 169); 1 Wendell's Blackstone, 85; Smith's Comm., § 795; *Wright* v. *Paton* (10 Johns., 300).

*George B. Hibbard,* for the respondents, cited *People* v. *Supervisors of Chenango Co.* (8 N. Y., 317, 324); *Darlington* v. *Mayor* (2 Robt., 274; Aff'd., 31 N. Y); *In re De Vaucene* (31 Howard, 289, 343); *People* v. *Toynbee* (3 Kern., 441); *Comm.* v. *Ketchings* (5 Gray, 486); *People* v. *McCunn* (16 N. Y., 58); *Williams* v. *People* (24 N.Y., 405); *Wellington* v. *Petitioners* (16 Pick., 87, 95); *Sharpless* v. *Mayor* (21 Pa., 147, 164); *Fletcher* v. *Peck* (6 Cranch, 87); *People* v. *N. Y. C. R. R.* (34 Barb., 123); *McComber* v. *The Mayor* (17 Abb., 35, 39); *Roosevelt* v. *Godard* (52 Barb., 533, 545); *People* v. *Canal Appraisers* (33 N. Y., 461); *Morgan* v. *King* (35 N. Y., 454); *Conner* v. *Mayor* (5 N. Y., 285); Comyn's Dig. Chemin, B. 1; Blackstone, Book 1, 357; 2 Bacon's Abr., Title Bridges; *Sun Ins. Co.* v. *The Mayor* (8 N. Y., 241); *Crowell* v. *Lawrence* (36

Barb., 177); *Bunham* v. *Octon* (35 How., 48); *Bretz* v. *The Mayor* (35 How., 130); *Phillips* v. *Mayor* (1 Hilt., 483); *Morris* v. *The People* (3 Den., 381); *Pierce* v. *Kimball* (9 Greenl., 54); *Bunham* v. *Webster* (5 Mass., 266); *Town of Guilford* v. *Supervisors of Chenango* (13 N. Y., 143); *Brewster* v. *City of Buffalo* (19 N. Y., 116); *Grant* v. *Courter* (24 Barb., 232); *The People* v. *Supervisors of Orange* (17 N. Y., 235); *Brewster* v. *City of Syracuse* (19 N. Y., 116); *Am. T. Co.* v. *Buffalo* (20 N. Y., 388); *Pacific Ins. Co.* v. *Soule* (7 Wallace, 433, 443); *Luke* v. *City of Brooklyn* (43 Barb., 54, 57).

Folger, J. (After stating the facts.) The Constitution provides, in section sixteen of article three, that, "No private or local bill, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in its title."

It has been held, that the placing by the legislature, in a private or local bill, of matter of public or general law, does not render the act, so far as the matter of public or general law is concerned, obnoxious to the section of the Constitution above quoted. For the reason, that *pro tanto*, the bill is not private or local, but is general and public. (*The People* v. *McCann*, 16 N. Y., 58–60; *Williams* v. *The People*, 24 N. Y., 405; and see Dwarris on Stat., 2d vol., p. 472).

We do not find, however, that it has ever been authoritatively asserted, and are not disposed to concede, that the joining of two subjects in a bill, one public or general, and one private or local, will save the private matter of the bill from conflicting with that clause of the section of the Constitution which prohibits a private bill from embracing more than one subject.

The authorities above cited do not hold that, by the introduction of the public or general matter into the bill, the bill loses its character as a private or local bill, and the conclusion from what is held by them, must be, that such a bill has two characters; and for so much of its contents as are general or

public, it is a general or public bill; and for so much of its contents as are private or local, it is a private or local bill. (And see Dwarris on Statutes, vol. 1, p. 354.)

It was conceded on the argument, that the subject of the provision above quoted is not private. The inquiry then is, is it local, within the fair scope and meaning of that word, as used in the Constitution?

The meaning of the word in the Constitution may be reached in two ways: First, by ascertaining what the framers of that instrument desired to guard against by placing this section in it, and thus finding the meaning with which they charged the word. What evil existed, to their perception, which, in their judgment, needed the remedy of so solemn a prohibition against its further practice? We gather that in the convention which proposed the Constitution of 1846, the habit of the legislature was assumed to have been, or it was feared it might be, to place in bills largely of a general nature, and having titles expressive only of such nature, provisions bearing upon private interests, or affecting portions only of the State, or its people; or to mass such provisions in bills with vague or narrowed and deceptive titles; or in bills, seeming from their titles to be local or private, to include important provisions of a general or public nature. So that the titles of the bills gave no notice to the public or the citizen without, or to the legislature within, what provisions, diverse and faulty in subject, might be hidden in their numerous sections. And that it was believed, that in this way, laws were enacted unjustly benefiting or harming the individual, or seriously affecting more or less circumscribed portions of the State; or that general or public laws were adopted, with no notice to the public, the individual, or the locality, of the legislative purpose; indeed, with no notice from the title, to legislators not in the secret, of what the bill contained on which they were called to vote. This was the evil to be remedied.

The design was, then, that no individual or knot of individuals, should be especially helped or harmed by a bill,

unless that bill was confined to one subject, and its title expressed the subject. The design was, that no segregated portion of the State, or of its people, should be made the subject of legislative action, unless the bill, effective thereof, in its title gave notice to it and its representatives of such purpose. The design was, that no enactment of general or public nature, should pass unchallenged, under the guise of a private or local purpose; and that there should be no combination, in one bill, of several private or local subjects. Apply, then, in this light, this section of the Constitution to the provision of law under consideration. The object of the provision, is to effect the building of a bridge over a certain creek. It may be presumed, that the bridge was to lead over that stream a public way coming to its banks, and that such way extended in its connections over the State, and that so, the whole people would or could use this bridge. But this does not give the character to this particular provision of the act; for this is not the subject of it. The subject of the provision, is the appropriation and raising of money for effecting that object.

The money is to be obtained, one portion of it, from the treasury of the State; so far it affects all the tax-payers of State. One portion of it is to be assessed upon taxable property of the county of Chautauqua, and one portion of it on that of the county of Erie. Separate or join these two counties in the operation of the provision, and it is but a portion of the State which is affected by it, and a part of its people. The provision bears upon the taxable property of a certain marked-out locality, the separated tax-payers of that locality, and no portion of the State outside the lines of those counties. No people of the State, not tax-payers within them, have interest in the subject of the enactment. Assuming that by the title of this bill, this act did not express this subject, the tax-payers of Chautauqua had no sign or hint that a burden was to be placed upon them. The designated portion of the State knew not, by the title of the act, that the purpose of the legislature was to affect it by one of the pro-

visions of that act. Here then, the design of the Constitu-
tion in this prohibition was thwarted. A portion of the
State, a part of its people, are affected by legislation, without
expression in the title of the law, that such intent is formed.
If to effect the contrary of this was the design of the Con-
stitution, and if the word local in its connection with the
other words in the· section, was used to express that design,
then the word local, as applied to a bill, to an act, to a law,
means such bill, act, or law as touches but a portion of the
territory of the State, a part of its people, a fraction of the
property of its citizens. In short, it means such a provision
of law as that under consideration.

Second : by ascertaining what meaning has been given to this
word by writers and courts when applied to a statute. Per-
haps it is not easy to give a general rule or definition of it,
which will be so exact in its scope and limit as accurately to
include every proper case, and to exclude all others. And
this may be the reason why it has been but seldom attempted
in the decisions. Elemental· writers aid us somewhat.
Bouvier (Law Dict., *voce* local) defines local, fixedness in a
place ; "local taxes or those which are collected for particular
districts." At the word statute, he makes no mention in his
division of statutes of those which are local, but defines pri-
vate acts as those relating to any particular place, or to seve-
ral particular places, or to one or several particular counties.
In his view, local and private would seem to be convertible
terms. So Kent (Comm., vol. 1, p. 415) makes no division of
statutes, save into public and private, and defines the latter
as such as concern the particular interest or benefit of certain
individuals or particular classes of men operating upon a par-
ticular thing or private persons ; and says, also, " the most
comprehensive if not the most precise definition in the Eng-
lish books is, that public acts relate to the kingdom at large."
Bouvier (Institutes, vol. 3, p. 95) defines the local courts of
the United States as those having jurisdiction over a limited
territory only ; some larger, some smaller. Jacobs (Law
Dict., *voce* Statute) classes acts as general or special, public or

private ; and defines special and private acts in nearly the words used by Kent. He says that they are classed in three series : 1. Public general acts. 2. Local and personal acts to be judicially noticed. 3. Local and personal acts not printed. And in the second series, he classes road acts and others of an extensive nature made public acts by a clause in them requiring that judicial notice be taken of them. Dwarris on Statutes, vol. 2, p. 463, makes the same division as Jacobs, and adds : " Acts relating to any particular place, or to divers particular towns, or to one, or to divers particular counties, are private acts." " A statute," he says, " which concerns the public revenue is a public act ; but some clauses therein may, if they relate to private persons only, be private." And in volume 1, at page 354, he says : " Every bill for the particular benefit of a person or company, or a locality in which the whole community is not interested, is, in a parliamentary sense, a private bill." Smith's Comm. on Constitutional and Statutory Construction, page 419, speaking of the provision in the Constitution of this State (article 1, section 97), that the assent of two-thirds of the members elected to each branch of the legislature, shall be requisite to every bill appropriating the public moneys or property for local or private purposes," goes so far as to make the word local, when applied to statutes, embrace all that is intermediate an individual person and interest on the one hand, and the aggregate body politic on the other ; and claims that to give full force and effect to the word local, in the sense in which it is used in the clause of the Constitution there considered, it must apply whenever the subject of the enactment falls short of affecting the unity of interest in the whole body politic, and that in such case the purpose falls under the denomination of a local one, and is included within the circle of restraint, which the framers of the Constitution have by the term local prescribed.

It will be observed that in some of these writers, the word local does not occur, as applied to statutes ; but that the word private, is used to designate a statute applicable to a limited district, as well as to individuals.

The framers of the Constitution, it is seen, use each word, and, of course, as having a different meaning. We judge that they employed the word private, as applicable to persons only; and the word local, as applicable to territory only; but both, as words signifying a narrowing or restricting of purpose. Hence, authoritative definitions of the word private, as applied to a law, throw light upon the meaning of the word local, as so applied.

Though this subject has come before the courts of this State repeatedly since the adoption of the Constitution of 1846, and this prohibition of it been considered in reference to its effect on different acts, the most of the cases assume or pronounce the particular act as local or not local, within the meaning of that word in this section of the Constitution, without attempting to lay down any general rule by which such question may be determined in other cases. Many of the cases, while conceding without discussion that the law in question in them is local, preserve its validity by deciding that but one subject is embraced in it, and that such one subject is sufficiently expressed in the title, or pronounce it void, in whole or in part, as in conflict with the clause in the Constitution; such are *Mosher* v. *Hilton* (15 Barb., 657); *De Camp* v. *Eveland* (19 Barb., 81); *Fishkill* v. *F. & B. Pl'k R. Co.* (22 Barb., 634); *Brewster* v. *City of Syr.* (19 N. Y., 116); *The People ex rel.* v. *Lawrence* (36 Barb., 177); *Outwater* v. *The Mayor* (18 How. Pr. Rep., 572), and many others. They aid, however, by the comparison which may be instituted between the subjects of the acts considered in them, and any other act subjected to the tests of the constitutional prohibition.

There are other cases which aid more directly in being decisions upon acts closely resembling the provision under consideration. Thus *The Sun Mut. Ins. Co.* v. *The Mayor, &c.* (4 Seld., 241–52), assumes or concedes that "An act to enable the supervisors of the city and county of New York to raise money by tax," is local. *Sharp* v. *The Mayor, &c.* (31 Barb., 562), and *Pullman* v. *The Mayor, &c.* (54 Barb.;

169), do the same.   There are still other cases which do, to greater or less extent, propose a rule or definition of what is, or is not, a local bill.   Thus, *Williams* v. *The People*, above cited, speaking of an act entitled "An act in relation to police and courts in the city of New York," which, among other provisions, provided that a larceny from the person of another, of property less in value than twenty-five dollars, might be punished as for grand larceny, says : "It has no doubt features which savor of locality, for it punishes a well known common law offence more severely, if committed under peculiar circumstances, within the limits of that city than if committed elsewhere.   But it prescribes the rule of conduct for all persons, whether resident of the city or of any other part of the State, and its increased penalties are intended *to protect residents of other localities equally with* inhabitants of the city, etc., etc.   I cannot think that a statute, having such consequences, is to be classed with special provisions making appropriations for particular roads, public buildings or the like, situated in particular local divisions."

*The People* v. *McConville* (35 N. Y., 449–51) adopts that in Burrill's Law Dictionary, and defines the word local as "relating to place, belonging or confined to a particular place, distinguished from general, personal or transitory ;" and pronounces local, the act then under consideration, for that "it has no force, beyond a particular city or county, and is therefore confined to a particular locality."   It cannot be said, that an act having force only in one county is local, but that an act having force in two counties is general.   For the territory circumscribed by the boundary lines of two adjoining counties, is as much a particular locality as that within the lines of one county.   The former is just as much marked off from the rest of the State, by the provisions of an act relating to it alone, as is the latter.   *In re De Vaucene* (31 How. Pr. R., 289), while conceding that a law, applying in its practical operation to a limited district of the State, is local, maintains, that, if the law relates to a subject affecting the

general welfare and interest of the whole State, and not of that district alone, it will be general. But the provision of law under consideration in this case, not only in its practical operation applies to a limited district of the State, but the subject of it, to wit, the raising of money by the taxation of the property of that district, affects the welfare and interest of that district alone. *The People* v. *O'Brien* (38 N. Y., 193), makes a distinction between local and general acts, holding that the former are confined to the persons and property of a specific locality, while the latter embraces either the persons or the property of the people of the State generally, or of some class of persons or species of property, not limiting the operation to any particular locality less than the whole.

*Burnham* v. *Acton* (35 How. Pr. R., 48) discusses an act relating to the board of health of the metropolitan dis tricts, and holds it is not local, because in its large and general powers all the people of the State are interested; to its provisions all the people of the State are amenable; and by its penalties, they may all be reached.

*The People ex rel.* v. *Allen, Comptroller*, decided in the Court of Appeals (3 Hand, 278), the meaning of the word local, as it is used in section nine article one, of the State Constitution above quoted, being under consideration, says: "An appropriation of money by the legislature, must generally be regarded as for a local purpose, where the money is to be expended in a particular locality, and the people of that locality are to be directly and mainly benefited, notwithstanding the public are incidentally and remotely benefited also."

In the case before us, the subject of the law is, that money is to be raised from a particular locality, and the people of that locality are to be, by its raising, directly and mainly affected, while the public are, in the use of the bridge, to be benefited. If, in the former case, the purpose of the appropriation is local, in the latter the subject of the law is local.

*Clark* v. *The City of Janesville* (10 Wis., 136, 179) holds that the word general, when applied to a law, is sometimes used as contra-distinguished from local, and that then it would mean, operating over the whole territory of the State, instead of in a particular locality.

It must be held, then, from the authorities also, that an act is local within the meaning of the Constitution, which in its subjects relates but to a portion of the people of the State, or to their property; and may not, either in its subject, operation, or immediate and necessary results, affect the people of the State, or their property in general.

The provision of law under consideration, is such an one. It is, therefore, obnoxious to the prohibition contained in the sixteenth section of the third article of the Constitution.

The counsel for the respondent cites us to *Pierce* v. *Kimball* (9 Greenleaf, Maine, 54). But looking into the case, it will be seen, that it is not counter to the views herein expressed. For the decision goes substantially upon the ground taken in *The People* v. *Williams*, in *De Vaucene in re*, and in *Barnham* v. *Acton* above cited, and the same is to be said of *Burnham* v. *Webster* (5 Mass., 266), also cited by the counsel for the respondents.

But it is claimed, that if it is held that this provision of law is local, yet the constitutionality of the law is preserved because the subject of the enactment is expressed in the title. That title is, " An act making appropriations for certain expenses of government, and for supplying deficiencies in former appropriations." It is said in argument, that the constructing of this bridge was a certain expense of government, and the directing of the assessment of a tax upon the taxable property of Chautauqua county to aid in constructing it, was an appropriation for a certain expense of government, and so the subject of the enactment was expressed in its title. It is true, that there is a government of the county of Chautauqua, and that it has certain expenses; but it is either that government, which is over it in common with all the other counties of the State, which makes its laws at the State capi-

tal, or it is that local, domestic government which has its seat and exercises its powers, and enacts its laws within the county lines. It would be absurd to suggest, that hearing of this bill by its title, as pending in the legislature at the State capital, it would for a moment be supposed, that it was the offspring of that local government. And referring it then for its parentage to the government of the State, its title is naturally taken as expressive of the expenses of the State government, and of a purpose to appropriate money from the State treasury for those expenses, certainly not as expressing the purpose of raising money to meet an expense of that local government for the construction of a bridge, by an assessment of the taxable property of the counties of Erie and Chautauqua. It seems clear to us, that the subject of this provision is not expressed in the title of the act, and that it is in conflict with the Constitution in this respect.

We are also of opinion that it conflicts with the Constitution, in that it embraces more than one subject. Though this provision should be found to be the only one in the act, private or local in its subject, it must be conceded, that there is another subject in it, and though that be general or public, and thus itself be valid, by its presence, it aids not this which is local, in a violation of the Constitution. It cannot be maintained, that this particular provision can be torn from the act as a whole, and be treated of by itself. The bill which passed the legislature was the whole bill, comprising this and all subjects which may be found in it. As to this provision, it is a local bill. But the bill has in it more than one subject. It has the local subject and many general subjects. Hence, taken in its aspect as a local bill, it conflicts with the organic law. Any other view would tend to thwart the purpose of the Constitution. That purpose is, that every bill on a private or local subject, shall stand alone, and ask for legislative favor on its own merits. It is as faulty and as much counter to the design, to be convoyed by a general or public subject, as to join with other subjects, private or local, and together obtain success. If one private

Statement of case.

or local provision in a bill, treating also of subjects general or public, may be detached from them in consideration, and if the title of the bill, being found to express its subject, the provision may be pronounced valid; why may not many provisions on subjects of private or local legislation, in a bill treating also of subjects general or public, be taken each by itself in turn, and the title of the bill being found to express its subject, all in turn be held valid? Thus would the Constitution be effectually frustrated. The true view is, that such a bill is general, and it is local. Being local and embracing more than one subject, it is, therefore, as to the private or local subject, void.

For the reason that this part of the act is local, that the act embraces more than one subject, and that the subject of this provision is not expressed in the title of the act, we think that the provision under consideration is unconstitutional and void.

The order appealed from should be reversed, with costs to the appellants.

All the judges concurring, order reversed.