[Nos. 2645 AND 2738.]

## A. D. HOLLEY *v.* THE STATE.

1. CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWER—LOCAL OPTION LAW.—The doctrine that the Legislature has no power to formulate and submit a proposed law to popular vote for ratification or rejection, founded upon the objection that such action would be an attempted delegation of a power confided to the Legislature alone, does not now obtain, and the weight of authority is now in support of the legislation commonly known as "local option laws." The rule is, that while the Legislature cannot delegate the power to make laws, it can en-

act a law to delegate the power to determine some fact or state of things upon which the law makes or intends to make its own action depend. No such question, however, arises upon the provisions of section 20 of Article XVI of the General Provisions of our State Constitution, since that section not only conferred the right, but made it obligatory upon the Legislature to pass an act enabling the people, by election, to adopt prohibition whenever they might desire to do so.

2. SAME—FEDERAL AND STATE CONSTITUTIONS CONSTRUED.—The distinguishing characteristic difference between the Federal and State Constitutions is, that the former is but a grant of legislative power, and Congress in framing laws can exercise only such authority as is granted; whereas State constitutions are but limitations upon the plenary power with which otherwise the legislative department of the State was originally invested.

3. SAME.—The Congress of the United States can enact no laws but such as the Federal Constitution, either expressly or by implication, authorizes it to enact. On the other hand, the power of a State Legislature to enact laws is absolute, except as restrained by constitutional limitations; and these limitations are created and imposed by express words, or by necessary implication.

4. SAME.—In construing the Constitution the courts of the State must understand that the framers of the Constitution, and the people who adopted it, employed and interpreted the words and language of the instrument in their natural sense. Under this rule a prohibited *sale*, which means a transfer for a valuable consideration, cannot be held to include a *gift*, which signifies a gratuitous transfer without an equivalent.

5. SAME.—The object of construction as applied to a written Constitution is to give effect to the intent of the people in adopting it. In the construction of written laws, it is the intent of the law maker that is to be enforced, which intent is to be found in the instrument itself; and it is to be presumed that language has been employed with sufficient precision to convey it, and, unless examination demonstrates that the presumption does not hold good in the particular case, nothing remains but to enforce it.

6. SAME.—Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature should be understood to mean what they have clearly expressed, and consequently no room is left for construction. The courts are not at liberty to search elsewhere for possible or even probable meanings when one is plainly declared in the instrument itself.

7. SAME—LOCAL OPTION LAW—CONSTITUTIONALITY OF A STATUTE.—Section 20 of Article XVI, General Provisions of the Constitution of 1876, provides that "the Legislature shall, at its first session, enact a law whereby the qualified voters of any county, justice's precinct, town or city, by a majority vote, from time to time, may determine whether the sale of intoxicating liquors shall be prohibited within the prescribed limits." In pursuance of this clause, the Fifteenth Legislature, on the twenty-fourth day of June, 1876, passed an act entitled "An act to prohibit the sale, exchange or gift of intoxicating liquors in any county,

justice's precinct, city or town in this State that may so elect, prescribing the mode of election and affixing a punishment for its violation." *Held,* that said act, in so far as it seeks to prohibit the gift of intoxicating liquors is unconstitutional. See the opinion *in extenso* for an elaborate discussion of the question.

8. SAME.—So long as the constitutional provision quoted remains a part of the organic law of this State, the Legislature cannot, in the exercise of its inherent power, enact, subject to ratification by the people, an independent general law prohibiting the gift of intoxicating liquors, since to concede such power would be to hold that the constitutional provision is not mandatory, but merely directory—a doctrine which is untenable. See the opinion *in extenso* on the subject.

9. SAME.—The Constitution is simply a chart containing limitations upon power, and when it declares how power may be exercised over any subject, then no power can be exercised over that subject in any manner not clearly within the plain import of the language of the Constitution. Mere silence, or failure to provide for some particular feature of the subject, cannot be construed into a neglect, omission or an ignoring of that feature. But *held* that with respect to the subject under consideration, the Constitution of this State cannot be said to have been merely silent, and it was no intent of the law-making power to prohibit the *gift* of intoxicating liquors.

10. SAME.—It is a general rule that when a Constitution gives a general power or enjoins a duty, it also gives by implication every particular power necessary for the exercise of the one or the enjoyment of the other. The implication under this rule, however, must not be conjectural or argumentative. And it is further modified by another rule, that, where the means for the exercise of a general power are given, no other or different means can be implied as being more effective or convenient.

11. SAME.—Another rule of construction is, that when the Constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition or to extend the penalty to other cases.

12. SAME.—Article 3239 of the Revised Statutes, and Article 378 of the Penal Code, in so far as they prohibit and impose a penalty for the gift or giving away of intoxicating liquors within prescribed limits where local option has been adopted, are unconstitutional and void, and a conviction for giving away liquors in such prescribed limits cannot be permitted to stand. But *held,* that when under pretense of giving away intoxicating liquor, a party sells some other article for more than its value, and gives intoxicating liquor as part consideration he can be prosecuted for the sale, but not for the gift of the liquor.

## WILLSON, JUDGE, DISSENTING.

13. SAME.—Under the recognized rule that a "reasonable doubt must be solved in favor of the legislative action and the act be sustained," Willson, Judge, dissenting from the majority of the court, holds the "Local Option Act" constitutional in its entirety. But he concurs in the disposition made of the case for reasons set forth in his opinion.

Appeals from the County Court of Wise. Tried below before the Hon. G. B. Pickett, County Judge.

The convictions in these cases were founded upon the giving away of intoxicating liquors in violation of the provisions of the "Local Option Act." The penalties imposed were fines of fifty dollars in one, and twenty-five dollars in the other of the cases.

*O'Neil, Holman & Donald,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

White, Presiding Judge. It is provided in the twentieth section of Article XVI (General Provisions) of our State Constitution that "the Legislature shall, at its first session, enact a law whereby the qualified voters of any county, justice's precinct, town or city, by a majority vote, from time to time may determine whether *the sale* of intoxicating liquors shall be prohibited within the prescribed limits."

In pursuance of this command of the organic law, the Fifteenth Legislature, the first which assembled under the new Constitution after its adoption, on the twenty-fourth day of June, 1876, passed an act entiled "An act to prohibit the sale, exchange *or gift* of intoxicating liquors in any county, justice's precinct, city or town in this State that may so elect, prescribing the mode of election, and affixing a punishment for its violation." This act, generally known as such, is, under the title of "Local Option," rearranged into convenient articles, but copied almost *verbatim* into our Revised Statutes from Article 3227 to Article 3239 inclusive, except the fifth section, in which is imposed a penalty for the violation of the law, and that is so changed by Article 3229 as to make the violator subject to prosecution and punishment as prescribed in the Penal Code.

As seen from the caption of the act, its object and purpose is "to prohibit the sale, exchange, or *gift* of intoxicating liquors," etc. It will be found, however, upon an examination of the various provisions of the statute, that, in regard to every detail concerning, and every prerequisite to the contemplated election for prohibition, and the subsequent publication of the result after it has been held, there is no mention made of the *"giving away"* of intoxicating liquors, and all said provisions have reference to and only mention the prohibition of *"the sale"* of

intoxicating liquors. (Genl. Laws, Fifteenth Legislature, pp. 26 to 28; Revised Statutes, Arts. 3227 to 3238 inclusive.)

After these specifications of the details with regard to the adoption of local option, Article 3239 provides "that when any such election has been held and has resulted in favor of prohibition, and the aforesaid (commissioners') court has made the order declaring the result, and the order of prohibition, and has caused the same to be published as aforesaid, any person who shall thereafter, within the prescribed bounds of prohibition, sell, exchange or *give away*, with the purpose of evading the provisions of this title, any intoxicating liquors whatsoever, or in any way violate any of the provisions of this title, shall be subject to prosecution by information or indictment, and shall be punished as prescribed in the Penal Code."

Article 378 of the Penal Code provides: "If any person shall sell, exchange or *give away* any intoxicating liquors whatever in any county, justice's precinct, city or town in this State, after the qualified voters of such county, justice's precinct, city or town have determined, at an election held in accordance with the laws of this State, that the sale or exchange of intoxicating liquors shall be prohibited in such county, justice's precinct, city or town, and the Commissioners' Court have passed an order to that effect, which order has been duly published in accordance with law, he shall be fined in a sum not less than twenty-five nor more than two hundred dollars."

In the cases from which the present appeals are taken the appellants were tried and convicted under the article of the Code just quoted, upon an information charging them with *giving away* intoxicating liquors in justice's precinct number two of Wise county, after "prohibition" or "local option" had been duly and legally adopted in said precinct at an election held for that purpose.

Many nice and intricate questions have been submitted for consideration in the very able and interesting oral and written arguments and briefs of counsel for appellant, but whilst we recognize their importance, we propose mainly to limit our discussion to a single proposition, since, if the view we have taken of it be correct, its decision will be conclusive of the whole case here submitted.

This proposition is: Are our civil and criminal local option statutes (quoted above) constitutional in so far as they attempt to prohibit the *giving away* of intoxicating liquors within the

prescribed bounds where local option has been adopted? We are fully conscious of both the delicacy and difficulty of this question, and after much research have found no case exactly parallel with the one under consideration, owing to the fact that no other State Constitution contains a provision similar to ours with reference to the subject, so far as we are advised. In most of the States where such laws have existed, they have been simply original legislative enactments adopted by virtue of that inherent power which is supposed to be absolute in that branch of State government when not limited or restricted by constitutional provisions, State or Federal. Such enactments have been generally passed and referred for subsequent ratification and approval to the popular vote in the State at an election to be held for that purpose.

A contrariety of opinion has existed as to the authority of the Legislature to submit for ratification by popular vote the adoption or rejection of a proposed law—the objection being that it was an attempted delegation of the trust to make laws, which trust is confided alone to the Legislature—and in some States laws thus adopted have been held unconstitutional. But, says Mr. Cooley, "we think that at this time the clear weight of authority is in support of legislation of this nature, commonly known as local option laws." It is said: "The Legislature cannot delegate the power to make laws, but it can make a law to delegate the power to determine some fact or state of things upon which the law makes or intends to make its own action depend. To deny that would be to stop the wheels of government." (Cooley's Const. Lim., 4 ed., 152, note 2; Locke's appeal, 22 Pa. State, 491; 38 Miss., 504; 51 Ill., 94; 35 Ark., 69.) No such question, however, can arise with us, because the provision quoted from our Constitution not only conferred the right but made it obligatory upon the Legislature to pass an act enabling the people to adopt prohibition by election, whenever they might desire to do so. And doubtless the inducement to engraft this provision upon the Constitution was to avoid all those perplexing constitutional questions which had arisen in other States with regard to such laws when submitted for adoption to the people.

With us the question is not the constitutionality of the local option law so far as the action of the people in determining its adoption is concerned, for that is the mode provided by the Constitution, and, so far as their duties and privileges in the premises are prescribed, there can be no doubt that the Legislature,

as we have seen, have limited the popular action within the pre- scribed constitutional grant of power on the subject. This action only determines "whether the *sale* of intoxicating liquors shall be prohibited within the prescribed limits."

But the Legislature has not stopped at this point. It goes further, and declares, upon its own authority, and upon its own motion, that whenever the people have prohibited the *sale* of in- toxicating liquors, then it shall also be unlawful to give away, and any one who *gives away* intoxicating liquors shall be pun- ished. Has the Legislature the power and authority to engraft this additional servitude, if we may so call it, upon the constitu- tional act of the people? The argument in support of such au- thority is that all power to make laws is inherent in the people when acting through their legislative branch of government; that independent of any constitutional provision expressly in- hibiting it, the Legislature can, by virtue of this inherent power, legally prohibit the sale or giving away of liquors throughout, or in any locality of, the State; that the Constitution, being si- lent upon the subject *of giving away*, left that matter, where it of right still belongs, to be acted upon or not by the Legislature as they saw fit; and that it is evident that the object and inten- tion of the framers of our organic law was primarily to provide that any *disposition* of intoxicating liquors, no matter how, might be prohibited in any locality where the people had de- clared that such articles should not be sold; and that the pre- scribing a penalty for giving away was simply carrying out more effectually such original intention, because to allow a giving away in such localities would, in a great measure, de- feat and render nugatory the prohibition or local option, and the purposes of its adoption.

The distinguishing characteristic difference between the Fed- eral and State constitutions is that the Constitution of the United States is but a grant of legislative power, and the Congress can, in framing laws, only exercise such authority as is granted, whilst, on the other hand, State constitutions are only limita- tions upon the complete power with which, otherwise, the legis- lative department of the State was vested in its creation. "Con- gress can pass no laws but such as the Constitution authorizes, either expressly or by implication, while the State Legislature has jurisdiction of all subjects on which its legislation is not prohibited. The law-making power of the State, it is said in one case, recognizes no restraints, and is bound by none, ex-

cept such as are imposed by the Constitution. That instrument has been aptly termed a legislative act by the people themselves in their sovereign capacity, and is therefore the paramount law. Its object is not to grant legislative power, but to confine and restrain it. Without the constitutional limitations, the power to make laws would be absolute. These limitations are created and imposed by express words, or arise by necessary implication." (Cooley's Const. Lim., 4 ed., p. 210.)

We concede, then, that unless the Constitution has by express words or by necessary implication limited the action of the Legislature, then the Legislature has the right *by general law* to prohibit the sale and the gift of intoxicating liquors also.

Has the Constitution done this? Obviously it has not done so by express words. Has it done so by necessary implication from the words used? This presents the question in a nutshell, but subordinate to its determination a number of collateral questions growing out of and incident to it must first be disposed of. Chief among these is to arrive at a proper construction of the language used. "In interpreting clauses we must presume that words have been used in their natural and ordinary meaning. Says Chief Justice Marshall: 'The framers of the constitution and the people who adopted it must be understood to have employed words in their natural sense, and to have understood what they meant.' This is but saying that no forced or unnatural construction is to be put upon their language, and it seems so obvious a truism that one expects to see it universally accepted without question; but the attempt is so often made by interested subtlety and ingenious refinements to induce the courts to force from these instruments a meaning which their framers never held, that it frequently becomes necessary to re-declare this fundamental maxim." (Cooley's Const. Lim., 4 ed., 72.)

In the Constitution the language used is "whether *the sale* of intoxicating liquors shall be prohibited," etc. We are aware that in *Franklin* v. *The State*, 12 Maryland Reports, 236, Chief Justice Le Grand holds that the word "give" means the same thing as the word "sell" in the statute he was construing; but in the subsequent case of *Parkinson* v. *The State*, 14 Maryland, 184, the former case is overruled in effect, the court holding, and as we think correctly, that "in their ordinary and familiar signification the words *sell* and *give* have not the same meaning, but are commonly used to express different modes of transferring the right to property from one person to another. A *sale*

means a transfer for a valuable consideration, whilst *a gift* sig-
ı ˮes a gratuitous transfer without any equivalent." No subtlety
ot ꞉ casoning or ingenuity of argument can, in common accepta-
tion, make the two words mean the same thing, and "usual ac-
ceptation in common language" is the rule provided by our Code
for the definition and meaning of words therein used. (Code.
Crim. Proc., Art. 59.)

But it may be urged that, though the words are not the same,
we are not limited to the words alone, but should look to the
intention of the law-maker, and, from that intention, give such
construction "as shall suppress the mischief and advance the
remedy." Discussing the intent as a factor, Mr. Cooley says:
"The object of construction, as applied to a written constitution,
is to give effect to the intent of the people in adopting it. In the
case of all written laws, it is the intent of the law-giver that is
to be enforced. But this intent is to be found in the instrument
itself. It is to be presumed that language has been employed
with sufficient precision to convey it, and unless examination
demonstrates that the presumption does not hold good in the
particular case, nothing remains except to enforce it. Where a
law is plain and unambiguous, whether it be expressed in gen-
eral or limited terms, the Legislature should be intended to mean
what they have plainly expressed, and consequently no room is
left for construction. Possible, or even probable meanings,
when one is plainly declared in the instrument itself, the courts
are not at liberty to search for elsewhere." (Cooley's Const.
Lim., 4 ed., p. 68.)

Now, to apply the rule. There can be no doubt but that the
intention was to prohibit *the sale* of intoxicating liquors, for
that intention has been expressed in the most plain, simple, posi-
tive and unambiguous terms by the Constitution. So far the in-
tent is unquestionable and explicit. Did the framers of that
instrument intend that *a gift* should also be prohibited? It is
scarcely possible, or even probable, that they could have done
so; for it is but just and reasonable to presume that, had such
been the case, they would, when they had the matter in hand,
have expressed that intent in language equally as plain and un-
ambiguous in the instrument itself. Construing the instrument
by its own terms, it must be clear that its makers never intended
to prohibit the giving away of intoxicating liquors, or they
would have said so in the provision itself when they had
the subject under consideration. Evidently the Constitution has
    G-1

not attempted to provide for the passage of any law prohibiting a gift of intoxicating liquors. It has provided for the passage of a law prohibiting the sale. How far has this express constitutional action affected the legislative right to pass laws prohibiting the giving away of intoxicating liquors?

As has been seen, had there been no constitutional action, then the Legislature, by virtue of its inherent absolute power, could have passed a law prohibiting all the different characters of the uses and disposition of intoxicating liquors, including a gift of the same. It is said the Constitution contains no provision relative to the gift, and that in so far as that subject is concerned the Legislature still retains its inherent power, and can pass laws with reference to it, and that such laws are valid, by virtue of this absolute inherent power, to prohibit the gift within the same bounds where the people have adopted local option. We do not think so. Without the constitutional provision, local option could not be adopted by the people in any particular county, city, justice's precinct, or town, unless it were done by a special or local law passed in conformity with section 57 of Article 3 of the Constitution, which provides that "No local or special law shall be passed unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published thirty days prior to the introduction into the Legislature of such bill, and in the manner to be provided by law. The evidence of such notice having been published shall be exhibited in the Legislature before such act shall be passed." But for the constitutional provision we have been discussing, and in the absence of a general law, the people of any particular locality would have had to comply with this fifty-seventh section before they could have had "local option." "Local option," even under the general law, means what its name imports—"option" to adopt a law for *a particular locality*, and not a law general in its operation throughout the State; "local," as applied to a bill or act, means one which touches only a portion of the territory of the State, or its citizens. (43 N. Y., 10; 68 N. Y., 381.) When adopted in conformity with the law, it only operates as a local or special law.

But again, can the Legislature, so long as this constitutional provision remains part of the organic law, in the exercise of its inherent power, pass, subject to ratification by the people, an

independent *general* law prohibiting the gift of intoxicating liquors? To concede such power it would be necessary to hold that the constitutional provision was not mandatory, but merely directory. In *Cannon* v. *Mathes*, Chief Justice Nicholson says: "The essential nature and object of constitutional law being restrictive upon the powers of the several departments of the government, it is difficult to comprehend how its provisions can be regarded as merely directory." (8 Heisk., Tenn., 405–517.)

Mr. Cooley says: "Courts tread upon very dangerous ground when they venture to apply the rules which distinguish directory and mandatory statutes to the provisions of a constitution. Constitutions do not usually undertake to prescribe mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done; and they must then be regarded in the light of limitations upon the power to be exercised. It is the province of an instrument of this solemn and permanent character to establish those fundamental maxims, and fix those unvarying rules, by which all departments of the government must at all times shape their conduct." (Cooley's Const. Lim., 4 ed., p. 94.)

Being simply a chart containing limitations upon power, whenever the Constitution declares how power may be exercised over any subject, then no power can be exercised over that subject in any manner not clearly within the plain import of the language of the Constitution. Mere silence or failure to provide for some particular feature of the subject cannot be construed into a neglect or omission, or an ignoring of that feature. Nor do we think it can rightly be said that the Constitution is silent. It has spoken in words as plain as language could well make it. It may be the language of silence, but it is a language nevertheless which flows naturally and by irresistible implication from its spoken words. As we read this language, the intention to prohibit the gift or giving away of intoxicating liquors in local option districts never entered into either the intention or act of our Constitution makers, and that it is a strained and unwarranted construction which would deduce a different inspiration from the words they have used to express the character and extent of their intention.

"It is established as a general rule that when a constitution gives a general power or enjoins a duty, it also gives by implication every particular power necessary for the exercise of the one or the enjoyment of the other. The implication under this rule,

however, must be a necessary, not a conjectural or argumentative one. And it is further modified by another rule, *that where the means for the exercise of a granted power are given, no other or different means can be implied as being more effective or convenient."* \* \* \* \* \*

"Another rule of construction is *that when the Constitution defines the circumstances under which a right may may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference, to add to the condition or to extend the penalty to other cases."* (Cooley's Const. Lim., 4 ed., p. 78.)

This rule is decisive of the controversy. The Constitution defines the circumstances under which the people may prohibit the sale of intoxicating liquors under legislative enactment, and the Legislature have attempted to extend the prohibition to a gift, and have imposed a penalty for giving away intoxicating liquors. This they had no authority to do. On the contrary, the Constitution having specified the bounds within which they were to act, it was a direct assumption and usurpation of unwarranted power to go beyond those bounds.

There is another view of the question which suggests itself. Intoxicating liquors are treated and considered as other personal property; a revenue tax is imposed upon their sale as upon other merchandise. If personal property, then many respectable authorities might be adduced, holding that it is beyond the power of the Legislature to prohibit a man from giving away his personal property. It is not necessary for us to decide this.

We hold that Article 3239 of the Revised Statutes and Article 378 of the Penal Code, in so far as they prohibit and impose a penalty for the gift or giving away of intoxicating liquors within the prescribed limits where local option has been adopted, are unconstitutional and void, and that a conviction under their provisions for a gift or giving away intoxicating liquors cannot be permitted to stand. Of course if a party, under the sham or pretense of giving away, sells some other article for more than its worth, and gives the purchaser as part consideration a drink of intoxicating liquor, he could be prosecuted and convicted, not for the gift but the sale of the liquor.

Because the provision of the law under which appellant was prosecuted and convicted in these cases is unconstitutional and void, the judgments are reversed and the prosecutions dismissed.

Willson, Judge, dissents from the argument and conclusions

above reached on the constitutionality of the law, but, for other reasons stated, holds also that the judgments should be reversed and the prosecutions dismissed.

WILLSON, JUDGE, dissenting. I cannot concur in the opinion of the majority of the court that Article 378 of the Penal Code, in so far as it prohibits the giving away of intoxicating liquors in "local option" districts, is unconstitutional. I shall not undertake to show that the able opinion of the presiding judge is in any respect incorrect, but shall merely announce my reasons for dissenting to the main conclusion arrived at in that opinion, that the law referred to is unconsitutional.

It is conceded in the opinion, and correctly, that the Legislature had the power to enact a law making it a penal offense to give away intoxicating liquor, unless that power has been taken away by an express limitation in the Constitution, or by a limitation *necessarily implied.* It is further conceded that there is no such express limitation contained in the Constitution, but it is held that such a limitation is *necessarily implied* by section 20 of Article XVI of the Constitution, requiring the Legislature to enact a law whereby the *sale* of intoxicating liquors may be prohibited, etc. I am not satisfied, fully and beyond a reasonable doubt, that such limitation is necessarily implied, or implied to any extent. I do not question the doctrine that limitations upon the power of the Legislature may sometimes be *implied,* but a court should never resort to this mode of restricting the powers of a co-ordinate department of the government except in the clearest and most unquestionable case of conflict with the intent of the framers of the organic law. A slight implication of the want of power in the Legislature to enact the law in question is not sufficient to warrant a court in holding the law to be void, but the implication should be so clear, strong and manifest as to place it beyond any reasonable doubt that the power has been denied. "A reasonable doubt must be solved in favor of the legislative action, and the act be sustained." (Cooley on Const. Lim., 220 *et seq.*, and the cases there cited.)

Entertaining, as I do, a strong doubt, and believing that doubt to be a reasonable one, of the correctness of the conclusion arrived at by a majority of the court, I must express my dissent to the same. I have diligently and with care examined every accessible authority bearing upon the questions discussed so

ably by Presiding Judge White, and was, before doing so, inclined to agree with the other members of the court upon the principal issue, but the investigation which I have made has led me not only to doubt the correctness of the opinion of the court, but has also led me to the conclusion that the law in question is not unconstitutional.

I think, however, that the civil statute upon the subject of local option and Article 378 of the Penal Code are in *pari materia*, and must be construed together, and that construing these statutes together makes it evident that a pure, simple *gift* of intoxicating liquor is not an offense within the meaning of the law, but to constitute a *gift* an offense it must have been made *with the purpose of evading the law*. I think the informations in these cases were fatally defective, because they charge no offense against the law. They do not charge that the defendants gave away the intoxicating liquor with the purpose of evading the law. (Rev. Stats., Art. 3239.)

*Reversed and dismissed.*

Opinion delivered June 23, 1883.