Desmond, J.
(dissenting). I dissent. If the language of section 17 of article III and subdivision (b) of section 1 of article IX of our State Constitution has meaning, this law is unconstitutional.
In 1954, as chapter 305 of the Laws of that year, there was enacted and signed by the Governor a bill which became article IS of the Judiciary Law? and established for the first time & *96 uniform jury system for all 57 counties of New York State outside the City of New York. Hailed as a major reform (see 1954 Annual Message of the Governor and his comments on approving the “up-state uniform jury system ”), the passage of this legislation was the successful result of agitation and recommendations made over a period of years by numerous persons and groups, official and unofficial (see Seventh Annual Report of N. Y. Judicial Council, 1941, p. 151; Eighth Annual Report of N. Y. Judicial Council, 1942, p. 191; Twentieth Annual Report of N. Y. Judicial Council, 1954, p. 157; Twenty-First Annual Report of N. Y. Judicial Council, 1955, p. 149; Third Report, New York State Crime Commission, May 4, 1953). Since article 17 of the Judiciary Law, setting up a uniform jury system (substantially similar to the one described in the 1954 act) for the five counties making up the City of New York, had been enacted years before, the new article 18 above described would, if allowed to go into operation on its originally fixed effective date of July 1, 1955, have completed the long process of providing a modern substantially uniform jury system for the whole State, with a continuing supply from properly chosen lists of qualified jurors. But such was not to be.
In 1955, before the 1954 law could go into effect, the Legislature enacted, and there was later signed by the Governor, a law which destroyed the symmetry accomplished by the 1954 act. The 1955 bill (ch. 864 of that year eff. July 1, 1955, and to be known as Judiciary Law, art. 16) revoked the earlier mandate that every one of the up-State counties must have the same methods of bringing jurors to court and administering jury laws. Instead, it made it optional with each county of less than 100,000 population to elect that “ the selection of trial jurors in such county” shall be governed by the new procedures. In other words, the revised and uniform system was made obligatory on the 15 up-State counties with more than 100,000 population, and optional with the 42 counties which have populations under 100,000 each. Uniformity disappeared. Any or all of the less-than-100,000 counties could stick to the old discredited way of ‘1 inadequate lists prepared by local officials from assessment rolls ” (Governor’s memorandum approving 1954 bill). Thereafter to be binding on 15 up-State counties only was the centralized jury system under the supervision of a county jury board consisting of a Justice of the Supreme *97 Court, the County Judge (or two Supreme Court Justices) and a member of the Board of Supervisors, with a Commissioner of Jurors appointed by the jury board and administering the system, subject to rules promulgated by the Appellate Divisions. No record, official or unofficial, discloses any reason why the 42 counties were exempted from these requirements of centralized control. There is some suggestion that the new requirements (of the 1954 act) were financially burdensome for the smallest counties, but this is in no way documented. Indeed, it is contradicted by the Governor’s statements (confirmed by the bill’s language) in approving the 1954 bill: “ In small counties which are not financially able to provide for a full time commissioner, any county official may be designated commissioner on a part time basis.”
Plaintiffs, two Albany County taxpayers, brought the present suit for a judgment that would declare to be violative of section 17 of article III and subdivision (b) of section 1 of article IX of the New York State Constitution both the 1954 and 1955 laws above described. An injunction was prayed for to restrain the enforcement of those laws in Albany County. On motion, judgment on the pleadings in favor of defendant, dismissing the complaint, was granted at Special Term, and from that judgment plaintiffs appeal directly to this court (Civ. Prac. Act, § 588, subd. 4).
The two laws construed together (Judiciary Law, arts. 16, 18) violate both provisions (stipra) of the State Constitution. The following parts of this opinion contain separate treatment of those two provisions.
First we deal with section 17 of article III of the New York State Constitution: “ The legislature shall not pass a private or local bill in any of the following cases: * * * Selecting, drawing, summoning or empaneling grand or petit jurors.” The general purpose of the whole list of prohibitions in section 17 of article III was to eliminate the practice of burdening the Legislature and the Governor with numerous proposals for special, nonuniform laws concerning counties, towns and villages (see 2 Lincoln’s Constitutional History of New York, p. 499). The ban against the enactment of such laws with respect to jurors was recommended by the Constitutional Commission of 1872 and appeared first in the Constitution in 1874 (similar prohibitions as to local bills with other subject matter were con- *98 tinned from the Constitution of 1846, art. Ill, § 16, now § 15). In People ex rel. Lee v. Supervisors of Co. of Chautauqua (43 N. Y. 10) there is a long discussion of the phrase “ local bill ” as used in the Constitution, and the court’s conclusion was that it meant a bill ‘1 which in its subjects relates but to a portion of the people of the State, or to their property ” (p. 21). A few years earlier in People v. O'Brien (38 N. Y. 193, 195), this court had said that, in the sense intended by the Constitution, “ any law limited to a particular locality is local, irrespective of the population of such locality, whether great or small”. Much water has flowed under the judicial bridges since those statements were made. Statutory classifications based on population have been sustained, even though applicable to the City of New York only or to one or more up-State counties only (see discussion in Stapleton v. Pinckney, 293 N. Y. 330, 335). But this court has “refused to extend or apply the rule to a case where attempted ‘ classification ’ is based on conditions ‘ which cannot be recognized as common to a class ’ and have no reasonable relation to the subject ” (Stapleton v. Pinckney, supra, pp. 334-335). In that same Stapleton opinion we remarked (p. 335) that in such cases there is really no “ class ” created, but only “ identifying marks of the locality or localities for which the Legislature is enacting a special law Surely, that latter language applies to what was done by the 1955 statute we are here examining. Having acted on a carefully arrived at conclusion that the entire State needed a uniform jury law, the Legislature, for no ascertainable reason, next year exempted 42 counties therefrom. (Just how arbitrary was that less-than-100,000 exemption is clear from the fact that the census figures available during the 1955 legislative session showed that three counties — Steuben, St. Lawrence and Ulster — had populations, as of the 1950 census, between 90,000 and 100,000, and three others — Jefferson, Chemung and Bockland — had over 85,000; see 1955 Legislative Manual, pp. 953-954.) The rule for the application to jury laws of section 17 of article III of our Constitution was announced by this court in 1944, as follows: ‘1 Change in rules for the selection of jurors intended to remedy conditions existing in one or more counties of the State must be made by general act applicable where such conditions exist, and not by the device of a statute in terms applicable to a ‘ class ’ of counties defined solely by reference to population *99 though the conditions intended to be remedied have no apparent relation to the basis of the classification ” (Stapleton v. Pinckney, 293 N. Y. 330, 336, supra). It is perfectly clear that the exemption of the 42 counties had no “ apparent relation” to remedying “ the conditions intended to be remedied ” by a uniform jury system. On the contrary, the Judicial Council’s 1954 Report to the Legislature had pointed out (p. 62) that “ In thirty-two counties, there is no public official charged with the public responsibility for supervision of the jury system, under Article 16 of the Judiciary Law ”. The 1955 law not only did not remedy this condition in those 32 counties but enabled ten more counties to put themselves in the same defective condition as to supervision of the jury system. We do not see how such legislation can escape the ban of section 17 of article III which has been rewritten into every revision of our State Constitution since 1874.
For reasons different but equally cogent, article 16 (the 1955 change) must be held to amount to a separate violation of subdivision (b) of section 1 of article IX of the New York State Constitution. That 11 County Home Rule ” section states first the requirement that “ The legislature shall provide by law for the organization and government of counties.” Next appears a prohibition. “ No law which shall be special or local in its terms or in its effect, or which shall relate specially to one county only, shall be enacted by the legislature ” unless “ upon the request of the board of supervisors or other elective governing body of each county to be affected ” or “ upon a certificate of necessity by the governor to the legislature ” and “ the concurrence of two-thirds of the members elected to each house of the legislature.” It is conceded that neither of these conditions (request by supervisors or certificate of necessity by the Governor) were met in connection with the passage of either the 1954 or 1955 jury bills. The question then is: was the 1955 enactment (exempting the 42 counties) “ local * * * in its effect”? How can it be doubted that the effect was “ local ” as to the included counties as well as to those given the right to elect? As to the 42 counties, it required the setting up of a county jury board and the creation of the office of jury commissioner. Of course, if we are right as to the violation of section 17 of article III (supra), we never really get to any question as to article IX. If any and every truly “ local” *100 jury law be unconstitutional under article III, then such a law could not be authorized by supervisors’ vote or Governor’s message, whether or not it changed the “ organization and government ” of one or more counties. So, whether we say that we do not reach the article IX question (as we said in Stapleton v. Pinckney, 293 N. Y. 330, supra) or that the 1954 and 1955 acts, read together, violate both articles is a matter of verbiage, mainly. Our conclusion is that the law as revised in 1955 is unconstitutional.
The long list of statutes cited at pages 85-86 of the majority opinion has no bearing on this case, since none of those cited statutes fall within the prohibitions of section 17 of article III and subdivision (b) of section 1 of article IX of the State Constitution.
The judgment appealed from should be reversed, plaintiff’s motion for judgment on the pleadings granted and judgment entered for plaintiffs as demanded in the complaint.
Fuld, Van Voobhis and Bubke, JJ., concur with Conway, Ch. J.; Desmond, J., dissents in an opinion; Dye and Fboessel, JJ., taking no part.
Judgment affirmed.